N. C. KING et al.

v.

F. D. RADEKE et al.

*Opinion filed October 24, 1898.*

1. FORFEITURE—*equity does not favor forfeitures.* Forfeitures are not favored in equity, and must yield to the principle of compensation where fair dealing and good conscience seem to so demand; nor will a forfeiture be enforced which the parties have waived by a mutual course of conduct.

2. CONTRACTS—*contract construed as creating the relation of debtor and creditor.* A contract between an improvement association and the citizens of a town, whereby the latter severally agree to pay a certain sum to be used by the former to secure a manufacturing plant, the money, with interest, to be repaid from the subsequent sales of lots by the association, evidences a loan and not a donation, and any payment on the subscription creates, to that extent, the relation of debtor and creditor between the parties.

*King* v. *Radeke,* 74 Ill. App. 369, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kankakee county; the Hon. JOHN SMALL, Judge, presiding.

PADDOCK & COOPER, and GRANGER & DAVIDSON, for appellants.

H. K. WHEELER, for appellees.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

The appellants are co-partners under the name and style of North Kankakee Improvement Association, a firm organized for the purpose of buying and platting land and selling town lots. They acquired several hundred acres of land, which they divided into blocks and lots, some of which were sold and a large number remain unsold. The association was formed in 1892, and in 1895 the partnership entered into a contract with the David

Bradley Manufacturing Company, by which it agreed to donate the sum of $100,000 to said manufacturing company if it would locate its plant on a part of the land of said association.    Of this sum $50,000 was to be paid by the citizens of Kankakee who expected to derive a benefit from the location of the manufacturing plant within the limits of the city.   A number of citizens entered into an agreement, by which they were to advance to the David Bradley Manufacturing Company $50,000.    This agreement on the part of the citizens was made with the North Kankakee Improvement Association at the request of the latter, who, in consideration of the agreement of the citizens to subscribe and pay the said sum of $50,000, contracted with the citizens, jointly and severally, by an agreement under seal, as follows:

"That the parties of the first part, in the name of the said North Kankakee Improvement Association, and also individually, covenant and agree that if the 'parties of the second part shall first make the payment and perform the covenants hereinafter mentioned on their respective parts to be made and performed, the said parties of the first part will perform the covenants on their part herein agreed by them to be done and performed.   The parties of the second part agree to and with the parties of the first part that they will pay to J. Herman Hardebeck, trustee of the North Kankakee Improvement Association, for the use of the said association, $50,000, to be paid as follows: One-fourth March 5, 1895; one-fourth May 1, 1895; one-fourth June 1, 1895; one-fourth July 1, 1895: *Providing*, no person signing as second party shall pay other than as follows: The parties of the second part hereunto subscribing their names do not in this agreement promise jointly, but severally, and each of the parties of the second part promises hereby to pay only that amount which is the quotient of the sum of $50,000 divided by the number of names signed hereunto as parties of the second part: *Provided, however*, this agreement will be of no bind-

ing force whatever on the parties of the second part unless fifty names of responsible parties shall be hereunto subscribed as parties of the second part: *And provided further,* that this contract is signed upon the express agreement that the parties of the first part shall secure the location of the David Bradley Manufacturing Works at North Kankakee, and if said plant and works be not secured and located then this obligation shall be void and all moneys paid hereunder shall be refunded by parties of the first part to parties of the second part, said location to be secured within the next sixty days, time to be of the essence hereof.   The parties of the first part jointly and severally agree that all sales of lots hereinafter made by the North Kankakee Improvement Association, or any of its agents, the amount which shall be received in cash therefor or which shall be received from time to time on the deferred payments shall be applied to the re-payment of the said sum of $50,000, and interest from the time of its payment, or any portion thereof, until the same is fully re-paid to the parties of the second part.   And the parties of the first part covenant and agree that the North Kankakee Improvement Association shall re-pay to the parties of the second part said sum of $50,000, and shall apply to the payment of said sum of $50,000 all the moneys arising from the sale of lots in North Kankakee from the present date until such time as the said sum of $50,000 is fully paid, with the interest thereon, as aforesaid.   It is further covenanted and agreed by the parties hereto that the persons who shall sign this agreement as parties of the second part shall designate a committee of not less than one or more than three, which committee shall be designated in writing, whose duty it shall be to receive and apply the payments from time to time made by the party of the first part to the parties of the second part, and to settle and adjust all accounts with said North Kankakee Improvement Association."

This contract was entered into by the association with the expectation that the location of the plant of the manufacturing company would facilitate the sale of the lots of the association, and with this object in view it undertook to re-pay the persons who advanced to the association the money which they contracted to pay. The fifty subscribers to this agreement who advanced the $50,000, which was to be paid $1000 by each, stipulated their payments should be made, one-fourth on March 5, 1895, one-fourth on May 1, 1895, one-fourth on June 1, 1895, and one-fourth on July 1, 1895. Those parties who signed the agreement May 1, 1895, paid $500, and the association advanced to the Bradley Manufacturing Company $25,000, the residue which was to have been paid by the citizens who each subscribed $1000.

The appellants filed this bill in equity to settle and dissolve this partnership, and in the bill it is averred that the appellees each paid $500 of their subscription and defaulted as to the residue. The bill alleges the indebtedness of the corporation is about $80,000, a large part of which resulted from the donation made by the association to the manufacturing company; that owing to the depreciation in value of the real estate, combined with the amount donated, the insolvency of the association resulted, and it asked to have the partnership affairs wound up and the partnership dissolved. The bill sets forth that appellees each paid $500 of their subscription, but owing to their default in paying the residue the association had to advance the sum, and the theory of the bill is, that by reason of their default in paying the sum of $1000 each, all rights or interests acquired by virtue of the contract, the clauses of which are above set forth, are barred, and no right of action exists against the association, or the individual members thereof, for any sum paid on the subscription, and alleges that the appellees threaten to bring a suit at law to recover the amount paid by them, and prays a cancellation of the contract and a

decree barring the right of recovery. Appellees answered and filed a cross-bill, severally claiming the right to recover the money so paid by them under the agreement. Issues having been formed on the original and cross-bills, the cause was referred to a master, who made his report. On hearing, a decree was entered in accordance with the prayer of the cross-bill, and the lands were ordered to be sold, and from the proceeds thereof appellees were to be paid, severally, the respective amounts advanced by them to appellants under the agreement. A personal decree against appellants was also entered. From that decree an appeal was prosecuted to the Appellate Court for the Second District, where it was affirmed, and this appeal is prosecuted.

The question presented on this appeal must be determined from the construction to be given to the agreement of the parties under the contract above quoted. By the contract of subscription the date of payment was fixed, but time was not made the essence of the contract. The contract of subscription was signed upon the express agreement that the improvement association was to secure the location of the manufacturing works at North Kankakee, and if the plant and the works were not secured and located, then the contract of subscription was to be void and the moneys paid refunded by the association to the subscribers. Immediately following that provision the contract provided: "Said location to be secured within the next sixty days, time to be of the essence hereof." The clause with reference to time being the essence of the contract only refers to the time within which the association must secure the location of the plant, and in no way refers to the time of the payment of the subscriptions. It appears from the evidence that the parties treated the payments as not being made within the time limited. All payments were made and received after the whole amount had become due under the contract. The parties having made the payments and re-

ceived the same after they had become due, appellants cannot be heard to say that time was the essence of the contract. Even if it is so stipulated, the parties by a mutual course of conduct may treat such clause as waived, and where they have done so, one of the parties cannot suddenly insist upon a forfeiture, but must, in order to avail himself of such a clause, give reasonable, definite and specific notice of such intention. Forfeiture is a harsh remedy, not favored in equity, and must yield to the principle of compensation where fair dealing and good conscience seem to so demand. (*Watson* v. *White*, 152 Ill. 364.) Unless a clear intention to forfeit the property right or interest is shown and expressed it will not be engrafted on a contract by a court of equity. *Railway Conductors' Benefit Ass.* v. *Tucker*, 157 Ill. 194.

Appellees were in no way responsible for the depreciation of the real estate or the want of success of the enterprise. Their failure to pay $25,000 did not create a liability for $80,000, which is alleged to be the amount owing by the association. The agreement provides: "The parties of the first part jointly and severally agree that all sales of lots hereafter made by the North Kankakee Improvement Association, or any of its agents, the amount which shall be received in cash therefor or which shall be received from time to time on the deferred payments shall be applied to the re-payment of the said sum of $50,000, and interest from the time of its payment, or any portion thereof, until the same is fully re-paid to the parties of the second part." This clause creates a liability on the part of the association to the subscribers, and by the contract entered into between the latter and the association the relation of debtor and creditor was created, under which appellants were to pay appellees, respectively, the sums advanced by them. Appellees were not insurers of the success of the business enterprise entered into by appellants. At the request of the latter the former agreed to advance $50,000, which was

to be re-paid, with interest.    They did advance $25,000 of this sum.

The clause in the agreement, "that the parties of the first part, in the name of the said North Kankakee Improvement Association, and also individually, covenant and agree that if the parties of the second part shall first make the payment and perform the covenants hereinafter mentioned on their respective parts to be made and performed, the said parties of the first part will perform the covenants on their part herein agreed by them to be done and performed," is a condition precedent, which must be complied with by the subscribers before the association is bound to do anything.    The performance of a condition precedent must be averred and proven before a liability exists on the part of a defendant, or there must be something to discharge him or prevent a compliance,—something that would relieve a party undertaking to do an act from its performance.    The subscription and payment of money in this case were, under this contract, no more than a loan by the subscribers to the association for the purpose of advancing the interests of the association by facilitating its sale of lots, and in part to be advantageous to the city of Kankakee in establishing an important manufacturing plant at that point. The money paid by the subscribers was not a donation in any sense of the term, but by the entire contract a loan was constituted, with interest.    It was not requisite, under the terms of this contract, that each subscriber should pay the full sum of $1000 before the relation of debtor and creditor was established between such subscriber and the association.    The relation was established on the payment of any part of the sum subscribed.    By the terms of the contract appellees did not agree to forfeit a right to recover against appellants for a failure to pay the residue, nor does such right of forfeiture exist upon any equitable theory.

The bill of appellants asking to bar a right of recovery and declare a forfeiture could not be sustained, and it was not error to enter a decree on the cross-bill of appellees.

The judgment of the Appellate Court for the Second District affirming the decree of the circuit court of Kankakee county is affirmed.

*Judgment affirmed.*