## Kate Flicek v. High Court Catholic Order of Foresters.

1. BENEFICIARY SOCIETIES—*Forfeitures by, Not Favored in Law.*— Forfeitures are not favored in law, and before they will be enforced by the courts they must be clearly and strictly established.

Assumpsit, on a certificate of a beneficiary association. Error to the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the March term, 1900. Reversed and remanded. Opinion filed July 23, 1900.

Statement by the Court.— July 13, 1895, defendant in error, the High Court Catholic Order of Foresters, a corporation organized under the laws of this State, issued its insurance certificate to one Mathias Flicek, who was then a member in good standing of St. Mathias Court, No. 521, which was a subordinate court of defendant in error, by which, upon condition that said Flicek should comply with the laws, rules and regulations then governing the order, and that might thereafter be enacted, defendant promised to pay to said Flicek's wife, Kate Flicek, $1,000 upon proof of death and surrender of the certificate, provided said member should be in good standing in the order at the time of his death.

Mathias Flicek died April 29, 1899, and his widow, Kate Flicek, brought suit against defendant in error to recover said insurance, alleging in her declaration, besides the issuance of said certificate, that said Mathias Flicek had complied with the rules and regulations governing the order, and was at the time of his death a member in good standing. The plea was the general issue. A trial before the court and a jury resulted in a verdict being directed by the court in favor of the defendant, on which judgment was rendered, to reverse which this writ of error is prosecuted. At the close of all the evidence the plaintiff asked the court to give an instruction in her favor, which was refused by the court, and an exception preserved by her.

Defendant in error is composed of numerous subordinate societies, known as courts, with constitutions and by-laws governing the principal body, the defendant in error, known as the high court, and also the subordinate courts, which, together, constitute the high court. Among other provisions of the high court constitution are the following:

"Article V, Sec. 9. The high court shall, each and every month, direct the levying of one, or if the treasury makes it necessary for the payment of death claims, more than one endowment assessment on each and every member of the order in good standing.

"Article VI, Sec. 4. The high secretary shall  *  *  * prepare all notices of endowment assessments and of all special assessments whenever the high court so directs and shall cause the same to be published in the official organ of the order, and shall mail, on or before the fifth day of each month, a copy of such notices to the secretary of every subordinate court in good standing. Every endowment assessment notice shall state that the high court levies an assessment on each member of the order in good standing for the purpose of paying death benefits, and that each and every court of the Catholic Order of Foresters shall forward immediately to the high treasurer the assessment due from every member, and said notice shall be in accordance with the form prescribed by the high court, and shall include a list of all the deaths subsequent to the last assessment.

" Article X, Sec. 1. Endowment assessments shall be called by the high court, as provided in article V, section

9, on or before the fifth day of the month, and due notice thereof shall be sent by mail to the recording secretary of each subordinate court in good standing, by the high secretary, who shall also cause a like notice to be published in the Catholic Forester, the official organ of the order.

" Sec. 2.    Upon the receipt of such notice, calling for an endowment assessment, or a special assessment, the recorder shall immediately acknowledge the same to the high secretary.

" Article XI, Sec. 2.    Upon the receipt of such notice calling for an endowment or a special assessment, .the. recording secretary of the subordinate court shall immediately acknowledge the same to the high secretary, and at the same time notify the financial secretary of his court of the facts set forth in the call.    The financial secretary shall thereupon certify to the treasurer of his court the amount due the high treasurer on account of such endowment or special assessment from the subordinate court, and the treasurer of such court shall thereupon pay to the high treasurer the amount so certified.

" Sec. 3.    The treasurer of the subordinate court shall notify the recording secretary of his court of the amount paid or forwarded to the high treasurer, on which account, the date it was sent and the manner in which it was forwarded or paid, and the recording secretary shall immediately notify the high secretary of all such facts and also report the same to his court at its next regular meeting.

" Sec. 4.    The publication of a notice in the Catholic Forester and the mailing of a like notice to the recording secretary of each subordinate court shall be the only notice required and given to any subordinate court and to the members thereof that an endowment assessment or a special assessment has been levied and called to the high treasury.

" Sec. 5.    Failure on the part of a subordinate court to pay into the high treasury, within the time fixed in article XII, section 5 of this constitution, shall by that fact subject such court to suspension, but such suspended court may reinstate itself, as provided in article XII, section 6 of this constitution, and the members in good standing of such suspended court may continue themselves in good standing during the suspension of the court, as provided in article XII, section 8, of this constitution.

Article XII, Sec. 5.    A subordinate court having been notified as provided in article X of this constitution, that an endowment or special assessment has been levied and called, and which shall fail to pay or forward to the high

treasurer the amount due on account of any such assessment within forty days from the date of the high secretary's notice, shall by that fact stand suspended."

A separate constitution and by-laws for the government of each subordinate court provides for regular meetings to be held by the subordinate courts twice a month; that the financial secretary of the court shall keep an account of the indebtedness and payments of each member of the court, shall receive moneys payable to the court, pay over the same to the treasurer of the court and notify the recording secretary of the court and the high secretary of the high court when a member is in arrears; that the endowment assessments of each member "shall. be due and payable at the first regular meeting held in the month in which they are levied, and they must be paid not later than on the 15th day of the next following month," and article 12, section 6, provides, viz.:

" In case a member has not paid the endowment assessment at the last meeting previous to the date on which it must be paid, or in case he has not paid the high court or State or provincial court special assessment, or the regular or quarterly dues at the meeting at which they must be paid, the court may, by a two-thirds vote of such meeting, appropriate out of the court fund a sufficient sum to pay either one or more of the above items for the delinquent member, and such member shall be charged in his court fund account with the sum thus appropriated and in addition with a fine of twenty-five cents; provided, however, that the court shall not make any such appropriation on account of any member who has not reimbursed the court for any previous appropriation made for him, and has not paid the fine charged therefor, and provided further that any such appropriation for the payment of an endowment assessment shall not be effective until one day after the date on which such endowment assessment must be paid."

Article XIII, section 1, provides, viz.:  " Any member allowing any of his endowment assessments, special assessments, regular dues or fines to remain unpaid after the time specified in article XII of this constitution, shall, by that fact, stand suspended from the order and from all benefits and privileges of the court, and the financial secretary shall immediately notify the high secretary and the chief ranger

of this court of the cause and date of such suspension, and the chief ranger shall announce the suspension at the next regular meeting of the court."

Articles XV and XVI of the subordinate court constitution provides for the payment of sick benefits to its members, the conditions under which such benefits shall be paid and the manner of their payment, and allow (article XV, section 3) a subordinate court to set apart a sufficient sum of money to keep paid a sick or disabled member's dues and assessments, but that such dues and assessments shall not be paid by "any court for a member for a longer period than one year."

It appears that the high court levied assessment No. 152 on December 22, 1897, and gave notice to the St. Mathias court of each assessment, directing the treasurer of such court to forward to the high treasurer one assessment for each member of their court initiated on or before January 1, 1898, and who was then in good standing; that the time for payment by the subordinate to the high court expired January 20, 1898, and that the time for members to pay assessment No. 152 expired February 15, 1898.

The regular monthly meeting of St. Mathias court was held February 9, 1898, at which meeting that court received a communication from Mathias Flicek, stating that he was "unable to pay to day in the meeting until next meeting—for fourteen days." The minutes of the court at that meeting show the following action by the court:

"Communication was received from Brother Mathias Flicek in which he asks extension of his assessment till next meeting. Communication was accepted and his request granted."

The next meeting of Mathias court took place February 23, 1898, the minutes of which meeting show that Flicek was "suspended for non-payment of dues," and thereafter, on May 25, 1898, the same court took action, shown by its minutes as follows:

"Mr. Mat. Flicek was expelled from the order in accordance with the by-laws of the high court."

Flicek v. High Court Catholic Order of Foresters.

There is no provision of the constitution and by-laws of the high court under which that court takes action against a member of a subordinate court, but any action in that regard is taken by the subordinate court.

It also appears from the evidence that the wife of Mathias Flicek, about the beginning of March, 1898, went to St. Mathias court and offered to pay the dues and assessments, whatever were due from Mr. Flicek, to the president of that court, and offered him $4, but he refused to take the money because Flicek, as he said, "was suspended." Mathias Flicek was taken sick in April, 1898, with consumption, and continued sick from that time up to his death, April 29, 1899.

Jones & Lusk, attorneys for plaintiff in error.

The issuing of the certificate is evidence of good standing in the order at the time it was issued, and that good standing is presumed to continue until the contrary is shown. High Court, etc., v. Zak, 136 Ill. 188.

There was no levy of the alleged assessment No. 152 for non-payment of which Flicek, as it is claimed, was suspended. Grand Lodge, etc., v. Bagley, 164 Ill. 340; Order, etc., v. Austerlitz, 75 Ill. App. 75; High Court, etc., v. Edelstein, 70 Ill. App. 95; Bagley v A. O. U. W., 46 Ill. App. 415; Tourville v. B. L. F., 54 Ill. App. 71.

If the failure to pay on or before February 15, 1898, the so-called assessment No. 152, would have been cause for forfeiture of Flicek's good standing, such forfeiture was waived by the extension of time by the subordinate court; and when once waived could never be presumed or availed of. And the action of the subordinate court was binding on the high court. And whether there was such waiver was a question for the jury. Forfeitures are not favored in law. Metropolitan, etc., v. Windover, 137 Ill. 417; Johnson v. Southern, etc., 79 Ky. 403; Order, etc., Austerlitz, 75 Ill. App. 87; Conductors, etc., v. Tucker, 157 Ill. 200; Continental, etc., v. Rogers, 119 Ill. 487; Sup. Lodge v. Abbott, 82 Ind. 6; Palmer v. Ford, 70 Ill. 369; High Court v. Schweitzer, 171 Ill. 325.

There is no proof of suspension of Flicek by the subordinate court, nor any action of the subordinate court of any kind affecting his good standing.   Tourville v B. & L. F., 54 Ill. App. 74–77; High Court, etc., v. Edelstein, 70 Ill. App. 96–7; High Court, etc., v. Zak, 136 Ill. 189–190.

E. S. CUMMINGS, attorney for defendant in error, contended that where there is no established rule prescribing how an assessment shall be made, any action which clearly shows an attempt to call upon the members to pay the stipulated amount into the benefit fund will be sufficient. Niblack on Benefit Societies, Sec. 252, page 479.

The action of the board of directors and the constitution and by-laws of the order should be construed together in determining the validity of an assessment.   Van Frank v. U. S. Benefit Assn., 158 Ill. 560–565; Fox v. Allensville, etc., 46 Ind. 31; Backdahl v Grand Lodge A. O. U. W., 46 Minn. 61; Citizen's Mutual F Ins. v Sortwell, 10 Allen, 110.

A subordinate lodge and its officers have no authority to waive any laws of the order with relation to the substance of a contract between an individual member and the order. . A. O. U. W. v. Jesse, 50 Ill. App. 101; Chadwick v. Order Triple Alliance, 56 Mo. App. 463; McCoy v. Roman Catholic Ins. Co., 152 Mass. 272; Lyon v. Supreme Assembly, 153 Mass. 83; Supreme Lodge v. Keener, 6 Tex. App. 267; 2 Joyce on Insurance, Sec. 383.

Where the laws of an order as to the suspension of a member are self-executing, no action is required on the part of the order or any of its officers to suspend the delinquent member.   Hensen v. Supreme Lodge Knights of Honor, 140 Ill. 301–306; Rood v. Railway P. & F. Conductors' Mutual Aid & Benefit Association, 31 Fed. Rep. 62; Borgraefe v. Knights of Honor, 22 Mo. App. 127.

MR. JUSTICE WINDES delivered the opinion of the court.

Several contentions are urged upon the court by counsel for plaintiff in error, which, it is claimed, are cause for reversal of the judgment, but in view of the conclusion we

have reached, it seems necessary to consider only one question, viz., whether there was a forfeiture by Mathias Flicek's failure to pay assessment No. 152 on or before February 15, 1898, which is binding upon his beneficiary, the plaintiff in error.   The evidence shows that if there was no such forfeiture, then the plaintiff is entitled to recover the amount of the certificate, less any unpaid assessments up to April 29, 1899, and interest on the balance from August 23, 1899.

It is important, in the consideration of this question, to note the relations under the constitutions and by-laws governing the order, of the member, the subordinate court and the high court.   In the matter of payment of endowment assessments, with which we are here concerned, the high court deals with the member through the subordinate court only, except in case of a suspension of the subordinate court for failure to pay to the high court such assessments, with which we are not here concerned, as there was no suspension of the subordinate court.   The member, in the payment of his assessments, deals only with the subordinate court, pays his assessments to that court, and they are forwarded, when called by the high court, to its proper officer. In all cases when an assessment is called by the high court, it must be paid by the subordinate court at a date prior to the assessment which the member is called upon to pay by the same notice given by the high court through the subordinate court.   In this case, when assessment No. 152 was called to the high treasury of the high court by notice of January 5, 1898, the time for its payment by the subordinate to the high court expired January 20, 1898, while the time for the member to pay to his subordinate court expired February 15, 1898.   This assessment, amounting to seventy-two cents, was paid by the subordinate court to the high court within the time required by the by-laws; but, as we have seen, the assured failed to pay the assessment to his subordinate court, and, upon request by him made, at a regular meeting of the subordinate court, which occurred six days before his time for payment expired, he procured an extension of time from the subordinate court until Feb-

ruary 23, 1898, when he, having still failed to pay the assessment, was by the action of the subordinate court suspended from the order because of his non-payment of the assessment, and the high secretary of the high court duly notified of such suspension. The claim of defendant in error is that, under section 1 of article XIII of the subordinate court constitution, above quoted in the statement, Flicek, by the non-payment of his assessment when it became due, according to the terms of the notice, was *ipso facto* suspended, and there was no necessity of any action being taken by the subordinate court in that regard. We think this contention is not tenable. As will be seen from the by-laws quoted in the statement, the subordinate court, in the case of the failure of a member to pay his endowment assessment, might appropriate out of the court fund a sum sufficient to pay it, and the member should be charged in his court fund account the sum so appropriated; also the subordinate court has the power to set apart a sufficient sum of money to pay the dues and assessments of a sick member for the period of one year. These provisions, in our opinion, clearly establish the right of the subordinate court to waive the provisions of the by-law above referred to, by the terms of which it is said that the member failing to pay his assessments when due should by that fact stand suspended from the order.

Forfeitures are not favored in the law, and before they will be enforced by the courts they must be clearly and strictly established. Palmer v. Ford, 70 Ill. 369; Conductors', etc., Assn. v. Tucker, 157 Ill. 200; Metropolitan, etc., Assn. v. Windover, 137 Ill. 417–32; High Court, etc., v. Schweitzer, 171 Ill. 325; Order of Friends v. Austerlitz, 75 Ill. App. 87; King v. Radeke, 175 Ill. 72–7.

The action of the subordinate court, as we have seen, in extending the time to Flicek for him to pay his assessment, was authorized by the by-laws and waived any right of forfeiture thereunder by reason of his failure to pay, and being once waived could not be revived or availed of for the same cause, viz., the payment of assessment No. 152.

It is not claimed that his rights were forfeited by reason of his failure to pay any other assessment, or for any other reason, and early in March, 1898, presumably at the first meeting of the subordinate court in that month, the president of the court refused to receive any delinquent dues or assessments from Flicek when the same were offered to be paid by Mrs. Flicek. He could do no more, and the actions of St. Mathias court, on February 23, 1898, in attempting to suspend him, and afterward in attempting to expel him, were of no avail as against his beneficiary. Continental, etc., Assn. v. Rogers, 119 Ill. 487; Met., etc., Assn. v. Windover, 137 Ill. 432; High Court v. Schweitzer, 171 Ill. 325.

The cases cited by counsel for defendant in error, which he claims sustain his contention that a subordinate lodge and its officers have no authority to waive any laws of the order relating to the substance of the contract between the member and the order, do not, in our opinion, sustain the contention in so far as concerns the action of the subordinate lodge or society. They relate to acts of officers or representatives of the subordinate society which they claimed to establish a waiver, and not to the acts of the society itself, which we have seen had, by the constitution and the by-laws of the order, the power to extend the time of payment of assessments to the member.

The judgment is reversed and the cause remanded.