## Hamilton Crary v. Jones & Dommersnas Company.
### Gen. No. 13,560.

1. RESCISSION—*what not ground for, of contract, of license.* A contract licensing the use of a particular patent and providing a royalty cannot be rescinded unless it appears that the terms of such contract have been violated by the licensee.

2. LICENSE—*what constitutes waiver of provision of contract of.* A provision in a contract providing for the payment of royalties, which requires the submission of sworn statements, is waived by the long-continued acceptance of unsworn statements without objection.

Bill in equity. Appeal from the Superior Court of Cook county; the Hon. WILLARD M. MCEWEN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1907. Reversed and remanded. Opinion filed December 24, 1907.

**Statement by the Court.** Appellee filed a bill in equity, afterward amended, against appellant, seeking to declare a forfeiture of a license to manufacture patent "fret or scroll saws," upon the ground that appellant had failed to make a sworn report of the number of such saws manufactured and sold by him during the quarter ending January 1, 1904. The amended bill contained an allegation not found in the original bill, to the effect that appellant was largely indebted to appellee for royalties upon saws manufactured and sold under said license during said quarter.

Defendant answered admitting that he had not made a sworn report for the period referred to, but averring that a report under oath had been expressly waived by complainant. The answer denied that any royalty was due for that quarter and averred that complainant had agreed with defendant on or about October 4, 1903, upon the amount of royalties to accrue upon sales made by defendant during the quarter preceding January 1, 1904, and defendant had paid complainant in advance the amount of royalties so agreed upon.

The contract constituting the license referred to was made between the parties of date December 11, 1901. It licensed defendant to manufacture "fret or scroll saws" under and during the life of patents owned by complainant, and to sell them in the United States and elsewhere. The defendant agreed to make full and true returns to complainant "under oath upon the tenth days of January, April, July and October in each year, of all sales made by him of saws containing the patented improvements aforesaid," and to pay "as a royalty fee" six per cent. upon the gross sum collected or received by him on such sales. Upon failure of defendant to make returns or to make the payments of license fees for a period of thirty days after the dates named, complainant might terminate the license by serving a written notice to that effect. The contract further provided that on and after one year from date of contract defendant should manufacture and "sell not less than 6,000 cable and ratchet saw frames or pay royalty on that number of frames if he has manufactured and sold less than that amount."

It appears from the evidence that from date of the contract until about November 12, 1903, defendant transacted business with the complainant company through its then president, one John P. Dommersnas, that in the course of business defendant had sold goods to complainant during the quarter ending the first of October, 1903, for which the latter was indebted to defendant in a sum equal to the royalty which would otherwise have been payable, and that on the 1st of October, 1903, there was nothing due from defendant to complainant. On the 4th of that month—October, 1903—complainant's president asked defendant to advance the royalty for the next quarter ending January 1, 1904, stating that complainant was in need of the money. The royalty for the preceding quarter had been $34.79 and complainant by its president estimated that the probable sales for the next quarter would be about the same. It was agreed, therefore, between them that the amount to be paid in advance as royalty

for that quarter should be fixed at $35. Complainant by its president thereupon further agreed with defendant that in consideration of the payment of that sum in advance complainant would waive payment of any additional royalty on unsold saws constituting the difference between the number sold and the 6,000 upon which by the terms of the contract defendant would otherwise be required to pay royalty, whether he had manufactured and sold that number or not. Defendant thereupon advanced and paid complainant the $35 agreed upon, in full of royalty for the quarter ending with December, 1903. This payment, together with the $34.79, royalty for the preceding quarter, which had been paid in merchandise purchased by complainant from defendant, a total of $69.79, was receipted for in writing by complainant "in full of royalty account to January 1, 1904. ($69.79)."

Afterward complainant's then president Dommersnas sold out his interest in the complainant company to one A. James, and resigned as president and treasurer. James succeeded him in those offices. Upon the eighth of December, 1903, the complainant wrote defendant notifying him of this change and saying, "We desire a report showing what has been done under your contract with the company up to December 1, 1903. Hereafter until further notice all business will be transacted with the president, Mr. James." To this, defendant replied of date December 10, 1903, "The only statement we have to make is that the royalty has been paid up to January 1, 1904," adding that he would be pleased to have Mr. James call, and felt it would be mutually advantageous to become acquainted with each other. Subsequently complainant's president and secretary did call. Defendant testifies, that he showed them the receipt for royalties to January 1, 1904. This was denied before the master by the complainant's president and secretary. Whether shown to them at that time or not, the secretary testifies that defendant told them the royalties had been

paid up to the first of January, 1904, and the president states they did not ask to be shown the receipt. Upon February 13, 1904, complainant by its new president served upon defendant a notice to the effect that the latter had violated the contract and by reason thereof the company elected to terminate it. Defendant was further notified ''not to hereafter manufacture, sell or in any manner deal in any of the patented devices referred to in said contract.''

There is evidence tending to show that after the present suit was brought complainant's secretary called on defendant and asked him if he would enter into a new contract providing for a larger royalty and for a larger sale per annum if complainant would withdraw its suit. It further appears that in a suit brought by said James against one of complainant's former stockholders it was decreed that James was owner of six-sixteenths of the patent and that before the present suit was brought said James personally sued defendant for six-sixteenths of the royalties, which suit was still pending when the present suit was begun.

The master found that while there was nothing due complainant for royalties on saw frames manufactured for the term covered by the receipt for $69.79 before referred to—that is, up to January 1, 1904,—defendant nevertheless was not relieved from the necessity of making a written statement on or before January 10, 1904, as to the saw frames manufactured and sold by him for the preceding quarter. The master therefore reported that complainant was entitled to have defendant's license forefeited and also to have him enjoined from manufacturing the saw frames and devices referred to in the contract. The court entered a decree accordingly, canceling the license, enjoining defendant and adjudging that he pay the costs. From that decree the defendant appeals.

FRED D. JACKSON and GEORGE N. B. LOWES, for appellant.

Crary v. Jones & Dommersnas Co.

NATHAN E. UTT and WILLIAM H. UTT, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The apparent ground upon which the Superior Court canceled the contract in controversy and restrained appellant from manufacturing saws thereunder is, that the latter made no report such as the contract provides for in response to the request made by appellee of date December 8, 1904. It is contended in behalf of appellant that appellee had waived a report under oath for the quarter preceding January 1, 1904.

In the written request referred to appellee said, "We desire a report showing what has been done under your contract with the company up to December 1, 1903." In the contract appellant had agreed to make full and true returns under oath upon the tenth days of January, April, July and October in each year, of sales made, but he was under no contract obligation to make at that time nor at any time a return up to December 1, such as appellee called for. If he made due return under oath on the tenth of October, 1903, or if such return under oath had been waived by appellee, he was under no contract obligation to make any further return until the tenth of January, 1904. If that return also had been made or waived, appellee had no contract right to require a return under oath until the tenth of April following. In any event, appellant was strictly within his contract right in regarding appellee's request for a report showing what had been done under the contract up to December 1, 1903, as a mere informal request for information and in replying as he did that "the only statement we have to make is that the royalties had been paid up to January 1, 1904." That this reply was in good faith and at least without apparent intention to give offense would seem to be indicated by the context of the letter which invited appellee's new president to a friendly call, suggesting that it would be "to our mutual advantage

to become acquainted with each other.'' Subsequently appellee's new president and secretary did call on appellant and asked to see his books. Appellant is said to have replied that he had no books to show him. In refusing also to show his books appellant seems to have been acting within his rights. The contract gave appellee no authority to inspect appellant's books of account, and such a demand would not in all probability be favorably regarded by any business man, especially when made by one who had a suit pending against him.

Without further notice or parley appellee, on the thirteenth of February, 1904, notified appellant that appellee had elected to terminate the contract and directed him not to manufacture thereafter or sell any of the patented devices referred to therein. So far as appellee then knew, appellant had made all due returns prior to the election of Mr. James as president of the company. The latter testifies that this may have been done, and that his predecessor Mr. Dommersnas had then ''attended to all the business of the company just as I do now.'' Appellant, however, testified and the fact is not questioned, that it had not been customary for him to make returns under oath and he had not done so, that the appellee had received his reports not under oath without any question, that the question as to returns under oath was never raised, that he had always paid appellant the amount due it under the contract, that he had paid these amounts to Dommersnas, then appellee's president, and that he had never had any business dealings with reference to the contract with any other officer of complainant prior to January 1, 1904. Notwithstanding this uncontradicted testimony it is declared by appellee's counsel that there is an entire absence of any evidence tending to show that appellee waived the making of reports under oath. This is the material question in the case.

It is axiomatic that forfeitures are not favored by the law, nor regarded by courts with any special favor.

King v. Radeke, 175 Ill. 72-77; Flicek v. High Court
C. O. of Foresters, 90 Ill. App. 314-352; Palmer v. Ford,
70 Ill. 369-377.  As said in the last cited case: "The
party who insists upon a forfeiture must make clear
proof and show he is entitled to make such declaration.
It is a harsh way of terminating contracts and he who
insists upon making such declaration cannot complain
if he is held to walk strictly within the limits of the
authority which gives the right."  In order to en-
force the forfeiture sought, appellee must show a clear
right.  This it does not do.  It is clearly apparent
from the unquestioned evidence that appellee had for
nearly two years been in the habit of receiving royal-
ties from appellant in accordance with the contract
upon unsworn reports which it had accepted without
question.  It is no doubt true that under the terms
of the contract appellee had a right to require there-
after that the returns should be under oath and it
was appellant's duty to so make them.  But it was
also within appellee's power to waive such sworn re-
turns, and that it did so for the period prior to the
first of January, 1904, is manifest.  We are at a loss
to understand the assertion that there is an entire
absence of evidence of waiver of sworn returns on the
part of appellee.  In support of such claim we are
referred to Penn. Coal Co. v. Ryan, 107 Ill. 226-234.
In that case it was claimed the appellant had waived
the right to insist on payment of money as the con-
tract provided because the contract had never been
canceled for appellee's default.  The court held that
"not having canceled the contract, the appellant sim-
ply occupies the same position it would occupy had the
cancelation clause been omitted."  It must suffice to
say that the case affords no support for the conten-
tion that appellee had not waived returns under oath.

It is argued that appellant deliberately refused to
comply with the contract when requested to make re-
turn of sales as provided therein.  As above stated,
appellant was under no contract obligation to make

return at the time appellee asked for a report show-
ing what had been done up to December 1, 1903, nor
for that period. All royalties had been paid up to
January 1, 1904. Appellee had asked for and received
payment in advance for that last quarter, on an esti-
mate of what the sales and royalties thereon would
probably be. The evidence shows that this estimate
was within one dollar and twenty cents of what the
royalties on sales for that quarter actually proved to
be. Appellee had receipted "in full for royalty account
to January 1, 1904." That this involved a waiver of
any report for that quarter seems too clear for argu-
ment. Of what avail would a sworn statement of sales
for that quarter have been when the parties had ex-
pressly agreed to settle and had settled for all such
sales in advance, upon an agreed estimate of what they
would be? Could there be, unless by express written
instrument, a more definite and effectual waiver of
further claims under the contract for that quarter? In
fact, however, the request referred to did not purport to
ask for a return under oath such as the contract pro-
vided for and apparently was not so intended by ap-
pellee nor so regarded at the time by either party.

We are unable to concur in the view expressed by
the master that it was the duty of appellant "to make
a written statement to said company on or prior to
January 10, 1904, as to the amount of saw frames
manufactured and sold by him for the three months
prior to January 1st." It follows that the decree
based on such finding must be deemed erroneous. In
view of this conclusion it is not necessary to consider
other questions presented in the briefs.

For reasons indicated the decree of the Superior
Court will be reversed and the cause remanded with
directions to dismiss the bill.

*Reversed and remanded with directions.*