# MARY E. HEALD

*v.*

# CHARLES A. WRIGHT *et al.*

1. MORTGAGE — *right to redeem from absolute deed held as a security.* Where a party sold a tract of land for $2,700, receiving $600 down, and took two notes each for $700, secured by mortgage on the premises for the deferred payments, and at the same time executed an agreement that he would repurchase at the same price, in case the grantee should so desire, within one year thereafter, and, at the request of the grantee, the grantor repurchased, which was evidenced by an indorsement on the agreement, and the grantor executed his note to the grantee for $693, payable in one year, and canceled the grantee's obligations, but let the title remain in him as security for the payment of this last note, and becoming involved and being indebted to his son, it was agreed that the latter should pay the note and on payment receive a deed, and for that purpose the grantor released all claims to the land, and the son gave his note for the sum owing by his father, and took a contract from the grantee for the sale of the land, the deed to be made on payment of the son's note, making time of the essence of the contract and reserving a right to declare a forfeiture, the land being worth a much larger sum than the son's note called for, and it appeared that the holder of the title died sometime after this last note matured without declaring any forfeiture, and that the son of the original grantor afterwards died, leaving all his land to his mother, and that no administration was ever had upon the estate of the holder of the title, and that he left minor heirs, so that there was no one to receive payment or reconvey upon payment: *Held,* that the mother, under the devise to her, acquired the right to redeem the land, and that the circumstances showed that the legal title was held by the original purchaser as a mere security for the repayment of the money paid by him, with interest, and that a redemption should be allowed upon equitable terms.

2. SAME — *when deed for land becomes a mortgage.* Where land is sold and conveyed and the parties afterwards rescind the sale, or the grantor agrees with the grantee to repurchase at the price sold for, and the notes and mortgage taken for a portion of the price are canceled, and the grantee is allowed to hold the title as a security for the repayment of the purchase money paid by him, with interest, the deed for the land becomes thenceforth a mortgage only.

3. FORFEITURE — *waiver of right to declare, in contract.* The right to declare a forfeiture reserved in a contract is one that may be exercised or waived by a vendor, and a failure to claim it may be regarded as a waiver

of the right.    Until it is declared the contract continues mutually binding on the parties.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

Mr. RUTHVEN W. PIKE, for the appellant.

Mr. JOHN VAN ARMAN, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in chancery, in the Superior Court of Cook county, by Mary E. Heald, against the heirs at law of J. Augustus Wright, deceased, and his widow, Emily S., and J. W. Keller, her husband, the object of which was to have a certain deed executed by H. N. Heald, the husband of said Mary, to J. Augustus Wright, decreed a mortgage, and for an account of rents and profits, and that complainant be permitted to redeem the premises on payment of whatever sum of money might be found due, and defendants be decreed to deliver up the possession to complainant, and convey the same to complainant, free from incumbrance, done or suffered by Wright or those claiming under him, and free from the dower of his widow.

The heirs at law of J. A. Wright, deceased, who were made defendants, were infants, and for whom a guardian *ad litem* was appointed who answers the bill of complaint, neither admitting nor denying the allegations therein.    A default was taken against Emily S. Keller and J. W. Keller, and the cause referred to a master to take proof.

On a subsequent day, the default of the Kellers was set aside and they answered the bill of complaint in full, to which there was a general replication.    Leave was then given to complainant to amend her bill of complaint in respect to the probate of the will of Dwight S. Heald, in the State of Vermont, and adding an allegation that no administration has been had on the estate of J. A. Wright since his decease, and no person, in this State, to whom payment could have been made under the con-

tract referred to in the bill of complaint of March 16, 1860 ; and adding an alternative prayer for a specific performance.

On the hearing the bill was dismissed for want of equity, at the costs of complainant, and this is the question presented on this her appeal.

Does the bill contain equity ? Is complainant in such a position in respect to the transaction disclosed by the pleadings and proofs, as to justify the interference of a court of equity ? What are the rights of appellant and how do they arise?

It is not denied that H. N. Heald, on the 16th of June, 1857, was the undisputed owner of the premises in question. On that day he conveyed the same to J. Augustus Wright, now deceased, the father of these infant defendants, for the consideration of twenty-seven hundred dollars, six hundred dollars of which was paid in cash by Wright, and his three promissory notes executed payable in one, two and three years for seven hundred dollars each, their payment secured by a mortgage on the land. Simultaneous with this an instrument of writing was executed by these parties to the effect that the grantor, Heald, in one year thereafter, namely, on the 16th June, 1858, in case Wright should so desire, would repurchase the land and repay the six hundred dollars with ten per cent interest thereon, and surrender to Wright these three notes amounting to twenty-one hundred dollars.

On or about June 16, 1858, there was indorsed on this agreement a writing, signed and sealed by the parties, to this effect : that Wright had elected to resell to Heald on the terms specified in the agreement, and reciting that Heald had executed his note to Wright for the sum of six hundred and ninety-three dollars, and had canceled Wright's three notes and released the mortgage given by Wright, in consideration of which Wright obliged himself to reconvey the land to Heald upon payment of this note for six hundred and ninety-three dollars, he, Wright, retaining the title as security for its payment. The note was payable six months after date, and became due December 16, 1858. On this day, the time of payment was extended for one year,

which would be December 16, 1859.  Three months thereafter, on the 16th of March, 1860, the amount of the note, and interest as compounded by Wright, was seven hundred and eighty-one dollars and thirty-six cents.  Heald indorsed upon the writing of defeasance of June 16, 1858, a written admission, that this note for six hundred and ninety-three dollars had been surrendered to him and cancelled, and that the mortgage was surrendered, and that Heald released all his interest and right in the same.

Here is the point at which the controversy arises :

The defendants claim, that these transactions left the title to this land unincumbered in Wright; that for the sum of six hundred dollars, which he had paid to Heald in 1857, and accrued interest thereon, he has a clear title to the property, that is to say, for this note and interest compounded, he has obtained the title to land for which he himself agreed to pay, in 1857, the sum of twenty-seven hundred dollars, and which he resold to Heald for the same price soon after.

Without some explanation it might be possible this claim of appellees could be sustained on the principle that aside from fraud an owner of land has a right to sell it for such price as he pleases.  But there are facts to be considered in this case which develop the equity of complainant and place it on a basis impregnable to assault.

They are these : At this time, March 16, 1860, Heald was much embarrassed in his finances and was indebted to his son, Dwight S. Heald, in a large sum of money, and it was agreed between them that he should take the land from Wright and pay the note and interest upon it, the total then amounting to seven hundred and eighty-one dollars and thirty-six cents. Wright assented to this arrangement, and on that day, March 16, 1860, executed and delivered to Dwight S. an agreement for the sale and conveyance of the land to him, the consideration being the payment of this seven hundred and eighty-one dollars and thirty-six cents in two years from date, with interest at ten per cent, payable at Wright's office in Chicago ; also to pay all taxes.

And it was provided in this agreement, that in case Dwight S. failed to make such payment or perform any of the covenants on his part the contract should be forfeited and determined at the election of Wright, and Heald to forfeit all payments, and Wright to have the right of re-entry. Time was an essential part of the contract. This contract was signed, sealed and acknowledged by Wright only.

It appears from the testimony of H. N. Heald, that the inducement on his part to this transaction was to pay off a debt he owed his son, and Wright's agreement to convey to his son upon the payment by his son of Wright's claim on the land, the title to which he held as security; that Wright took his son for the indebtedness, instead of himself, and continued to hold the land as security for the same. In explanation of the release set up by appellees, he says if he signed it, it was for the purpose and with the understanding that the release should go to the benefit of Dwight S. It was not intended he should surrender his right to the land for this six hundred dollar note, and interest thereon, but to enable Wright to make the conveyance to Dwight S. for witness. The whole transaction was talked over and all Mr. Wright claimed was his money and interest.

This looks reasonable. It is incredible that a man should agree to lose all hold upon the title to a piece of land, near Chicago, which he had sold for twenty-seven hundred dollars, for a sum less than eight hundred dollars.

At this date, the vast preponderance of the testimony is, the land was worth twenty-seven hundred dollars, or even a larger sum. One of the two witnesses for appellees on this point (Perkins) testifies, he did not know this land until 1864; that, as the agent of the widow — now Mrs. Keller, one of the appellees — in 1865 and 1866 he endeavored to sell it; he advertised and got offers varying from twenty-five to fifty dollars an acre for it, and in 1867 got an offer of seventy dollars. This, considering Mrs. Keller, whose interest he represented, had merely a dower interest in the land, was a large offer. The other witness was in 1860 a youth not 16 years of age, and

22       HEALD *v.* WRIGHT *et al.*       [Sept. T.

Opinion of the Court.

not a judge of values when placed in opposition to the witnesses on the part of appellant. We repeat, in the face of the facts as to the value, it is incredible that a man holding the title should part with it for less than eight hundred dollars.

On the 12th September, 1862, about six months after the payment was due, Wright departed this life, intestate, without having declared a forfeiture, and without a re-entry, but having paid taxes on the land for 1862, amounting to one dollar and fifty-two cents.

Late in June, 1863, nine months after the death of Wright, Dwight S. Heald died in the State of Vermont, having paid nothing on this contract and no taxes, leaving his last will, by which he devised to his "beloved mother," appellant herein, all his land and real estate.

This is the source of appellant's claim, and the basis of her right to exhibit this bill. It is not disputed, if Dwight S. Heald had any rights in this land, they passed to appellant by his will.

The uncontradicted testimony in the case, regarded in the light of the attendant circumstances, shows most clearly, we think, that Wright never supposed he had obtained the title to this land for the six hundred dollars he had paid upon it in 1857, agreeing, at the same time, to pay twenty-one hundred dollars in addition at a future day.

These being the facts, when, on June 16, 1858, Wright elected that Heald should repurchase the land on the terms stated, the deed which Heald had executed to Wright became from thenceforth a mortgage only — security merely for the repayment of the six hundred dollars advanced by Wright and the accrued interest thereon. Heald then verbally transferred all his interest to Dwight S., which was the right of redemption, he (Dwight S.,) with the assent of Wright, and in pursuance of the prior agreement with him, testified to by Heald, assuming to pay his father's indebtedness to Wright, which was the note and interest.

This was the position of the parties on the 15th of March, 1860, Dwight S. standing in the shoes of his father, who was entitled to redeem.

But it is urged by appellees, if Dwight S. Heald had any rights growing out of this transaction — which they deny — he had forfeited them by his *laches;* he waited until the property had largely increased in value, to assert his rights, and it would be inequitable now to decree them to his devisee, the appellant.

This case has been presented in two aspects by the bill of complaint, one as occupying the position of the mortgagors, with a right of redemption, the other, claiming a specific performance under the writing executed by Wright to Dwight S. Heald, and the objections above stated of appellees have more direct reference to this aspect of the case.

But however made, or to whichever phase of the case the objections may be applicable, it is a sufficient answer to them to say, that by the express terms of the agreement, the money was to be paid at the office of Wright in Chicago, and the contract to be forfeited at the election of Wright on default of Dwight S. Heald.

The proofs do not show that Wright, at any time, elected to declare a forfeiture, consequently the agreement was in full life at the time of his death and continued to be mutually binding on the parties. It can have no weight, that this contract was liable to forfeiture, since Wright did not manifest his election to forfeit. It may be said, failing to claim the forfeiture was a waiver of it. *Skinner* v. *Newberry*, 51 Ill. 205.

Wright died September 12, 1862, leaving two minor children, quite infants, and no administration was had on his estate up to the time of the hearing of this cause. Wright has had no personal representative in this State, as is conceded, to whom payment could have been made, or who could enter satisfaction on the mortgage or receipt for the redemption money or reconvey.

It is true, appellant could have commenced her action at an earlier period, but as there was no one pressing for the money, her *laches* may not be wholly without excuse, if excuse were

needed. No effort was made by Wright or by any one representing him, to foreclose the equities or to make the title absolute in him. His heirs at law could have invoked the aid of the court for such purpose at any time.

On a careful consideration of the whole case, we are rather disposed to hold appellant, through the devise of Dwight S. Heald by his last will and testament, acquired the right to redeem this land and not a mere right as a conditional purchaser, and the court should have permitted her to redeem on equitable terms.

The decree of the Superior Court is reversed, and the cause remanded with directions to allow appellant to redeem this land on such terms as to that court shall seem equitable and just.

*Decree reversed.*