THE RIO GRANDE RAILWAY COMPANY v. J. S. AND M. H. CROSS.

No. 314.

1. **Liability of Railway in the Hands of Trustees.**—A provision in the railway charter which authorized the company to raise money by the sale of bonds, and to secure the bonds by a mortgage of its road, capital stock, franchises, etc., did not authorize the company to surrender the control and management of its road to the trustees in such mortgage, and thus relieve itself from its liabilities and duties to the State and the public. The company was still liable for loss occurring during such control. Following Woodhouse v. Railway, 67 Texas, 416.

2. **Objections to Evidence not Considered.**—The case having been tried upon an agreed statement of facts, objections by defendant to it as an entirety, not pointing out the particular parts of the evidence. objected to, nor showing what part of it was offered by defendant himself, will not be considered.

3. **Interest as Damages.**—Legal interest may be allowed upon the value of goods lost, as a part of the damages, and there was no error in allowing it at the rate of 8 per cent per annum, from the date of the loss to the 13th day of July, 1891, the date at which the legal rate of interest was changed, and at 6 per cent per annum thereafter.

4. **Bill of Lading—Limitations of Liability.**—The trustees operating the road gave to the consignors a written memorandum stating the quality, character, condition, and value of the property shipped, with agreement to deliver the same at Brazos, to the steamship company. Before the shipment, the consignors delivered this writing to the agent of the steamship company, who took it up and gave the consignors bills of lading, the terms of which excused the steamship company from liability for loss by robbers or thieves. The train was robbed on the way to Brazos, and the money shipped was never delivered to the steamship company. The limitation of liability in the bill of lading was held to apply only to carriage by ship, and not to carriage by the railway company.

5. **Brief, Propositions in.**—A proposition not supported by the assignment under which it is made will not be considered. The assignment was, that the evidence did not show liability on the part of defendant. The proposition was, that because the record did not affirmatively show payment or demand of pay for carrying the money, that therefore appellant was a gratuitous bailee.

APPEAL from Cameron. Tried below before Hon. JAMES C. RUSSELL.

The second section of the deed of trust given to secure the bonds of the railway company was, at the request of counsel for appellant, added to the findings of fact by the court, and, in so far as its substance is not given in the opinion in the statement of the case, it provided, that if the trustees took charge of the road, they should have the right to make betterments, and that after paying for necessary betterments, and the running expenses, they should apply the remainder of the earnings to the payment, first, of the interest due on the bonds, and second, to the principal of the bonds, pro rata; and in the event that the earnings did not exceed the yearly expenses and outlays, it should be lawful for the trustees to sell the road.

*James B. Wells* and *Hume & Kleberg*, for appellant.—1. The court erred in admitting, over defendant's objections, the evidence adduced by plaintiffs, showing that all of the acts complained of and alleged in plaintiffs' petition as creating a liability on the part of this defendant were each and all so done and committed, not at all by this defendant, its agents, or employes, but were so done and committed by Simon Celaya and Feliciano San Roman, trustees for the first mortgage bondholders of the defendant company, who were at the time in the exclusive possession, management, and control of and exclusively operating the said railway, its franchises, property, etc., as a railway, and were thus the common carriers who incurred the liability and were responsible to the plaintiffs, if any liability there was; and that each and all of said acts complained of were so done without the knowledge or consent of this defendant; and therefore all of said evidence is immaterial, incompetent, and irrelevant. Railway v. Watts, 63 Texas, 549; Easton v. Railway, 59 Me., 520; Mahoney v. Railway, 63 Me., 68; Ballou v. Farum, 9 Allen, 47; Sprague v. Smith, 29 Vt., 421; Daniels v. Hunt, 118 Mass., 543; Connors v. Hennesey, 112 Mass., 96.

2. If by reason of any contractual arrangement between the Rio Grande Railway Company and the trustees who have charge and control of the railway, or if under the law the said company is liable for the acts of said trustees, their servants and agents, then the petition of plaintiffs should have alleged the same by proper averments; and in the absence of such averments the evidence offered by appellees was not admissible, and should have been excluded upon the objections of appellant. Brown v. Gay, 76 Texas, 444; Railway v. Watts, 63 Texas, 549.

3. Interest being a creature of statute, can not be awarded by the courts except as the statute directs. At the time of the rendition of the judgment in the case at bar, 6 per cent was the rate fixed by statute, and the court was without power to allow a higher rate. The statute allowing 8 per cent interest having been repealed before the rendition of the judgment in this case, the court was without power to allow that rate for the time intervening between the beginning of appellees' claim and the repeal of the statute. Acts 22nd Leg., p. 87; Coles v. Kelsey, 13 Texas, 75.

4. Under the bills of lading held by appellees they were not entitled to recover for loss of articles occasioned by theft or robbery. Railway v. Harris, 67 Texas, 166; Railway v. Sherwood, Thompson & Co., 84 Texas, 125.

*McCampbells & Welch*, for appellees.—1. Every railway in this State is liable for the acts of all persons to whom it confides the management and control of its road, as fully as though operated under the immediate control of the agencies provided by its charter.

2. The power to mortgage a road can not be extended by implication,

in the case of a railway corporation in this State, so as to permit its management, control, and operation by private parties, and permit it, as a corporation, to relieve itself of its duties and liabilities to the public. Woodhouse v. Railway, 67 Texas, 416; Railway v. Underwood, 67 Texas, 593; Railway v. Moody, 71 Texas, 616; Railway v. Morris & Crawford, 68 Texas, 59; Railway v. Culberson, 72 Texas, 377; Railway v. Rushing, 69 Texas, 306; Pennsylvania Co. v. Railway, 118 U. S., 311; Naglee v. Railway, 83 Va., 707; 19 Am. and Eng. Encycl. of Law, 733, note.

3. Where the rate of interest has been decreased by statute, the rate prescribed by the former law should be adopted up to the time of the change, and that of the new law during the time subsequent. Gen. Laws 22nd Leg., 1891, p. 87; White v. Lyons, 42 Cal., 279; Reese v. Rutherford, 90 N. C., 644; Starck v. Olney, 3 Ore., 88; Besser v. Hawthorn, 3 Ore., 129; Wilson v. Cobb., 31 N. J. Eq., 91.

GARRETT, Chief Justice.—This suit was brought by the appellees, in the District Court of Cameron County, against the Rio Grande Railway Company, to recover from it the value of certain Mexican eagle dollars and a package of gold coins, of the aggregate value of $9110, alleging, that on the 17th day of January, 1891, they delivered the same to the appellant in the capacity of common carrier for hire, to be transported by it from the city of Brownsville to Point Isabel, in Cameron County, Texas, there to be delivered by it to the Morgan line of steamers. That appellant failed to transport and deliver said articles of value, whereby it became liable to appellees for the value thereof, with legal interest.

Appellant answered by a general demurrer and general denial. The case was tried without a jury, and resulted in a judgment for the appellees for the value of the money as alleged, together with interest thereon at the rate of 8 per cent per annum from January 19, 1891, to July 13, 1891, and from that date at the rate of 6 per cent per annum.

The case was tried upon an agreed statement of facts, from which the following condensed statement is made:

1. The appellant, the Rio Grande Railway Company, is a corporation, created by special act of the Legislature of the State of Texas, approved August 13, 1870, with authority to construct, equip, maintain, and own a railway from Point Isabel, on the Laguna Madre, to Brownsville, on the Rio Grande. By section 5 of said act it is provided, that " said company shall have power to borrow money or to purchase property upon its own credit, for the purpose of constructing and maintaining its railway, and may issue bonds and obligations therefor, payable at such time and place and at such rate of interest, in the lawful money of the United States, or of any foreign country, as the directors of said company may

elect; and to secure the payment of said bonds or obligations may mortgage its road, its capital stock, its corporate franchises, and any or all of its property, real and personal, or any part or portion thereof, in such manner and form as said company or its directors shall deem best and expedient." Spec. Acts 12th Leg., pp. 189–192.

2. To raise money necessary to build said railroad, appellant, on the first day of July, 1872, issued and sold its bonds to the amount of $150,-000, and to secure their payment made and delivered to H. E. Woodhouse and Joseph Rudd, Jr., trustees, a mortgage on all the property of the road and all corporate franchises held or exercised by said railway company. Said mortgage is of record in Cameron County.

3. By the provisions of said mortgage, in case of default in the payment of interest on any of said bonds for the period of six months, the trustees were authorized to take, enter into and upon, all and singular, the premises conveyed, and to have, hold, and use the same, operating by their superintendents, managers, receivers, or servants, or other attorneys or agents, the said railway, etc., with the full charge and management of the railway, to the exclusion of the company, in order to pay off the mortgage; but if the yearly income should fall short of the expenses, etc., the said trustees were authorized to sell.

4. About the 1st day of January, 1884, Simon Celaya and Feliciano San Roman, who were made substitute trustees under said deed of trust, by virtue of the aforesaid power vested in them under said instrument, went into the exclusive possession, operation, management, and control of said railway line, its property, franchises, etc., and ever since that time, up to the time of trial, had been and were continuously and exclusively in the possession of and control and management of said railway, and so in all things operating and running said road, and were especially doing so on the 19th day of January, 1891, and up to the time of trial.

5. On said last named day said trustees, Celaya and San Roman, through and by their agent and employe, C. Martinez, received from appellees at their railway office in Brownsville, to be transported to the end of the line of said railway and delivered to the Morgan steamship line (of the Southern Pacific Steamship Company's line), 10,500 Mexican eagle dollars and a package of gold, together of the value of $9110. By their said agent said trustees gave to appellees a memorandum in writing, stating the quality, character, order, condition, and value of the aforesaid property, as follows:

"BROWNSVILLE, TEXAS, January, 1891.

"Forwarded by J. S. and M. H. Cross, in good order, by the Rio Grande Railroad, the following property, to be delivered in like good condition at Brazos, unto Morgan, number 716. [Description.]

[Signed]                                        "C. MARTINEZ."

Appellees at once, and before the shipment of the money by the trustees, delivered said written memorandum to the agent of the steamship company, who took it up and issued to appellees four bills of lading.

6. The aforesaid trustees, in their usual course of operating, running, managing, etc., of said railway, caused said articles of value to be laden on the regular train of said railway on the morning of said 19th day of January, A. D. 1891, and started for its terminus at Point Isabel, and when said train had proceeded on its course about fifteen miles from the city of Brownsville, it was attacked by Mexican bandits and robbers, numbering ten or twelve persons, its engine and part of its cars were derailed and some of them burned, and the train and the persons thereon robbed, and the persons in charge of said train and others thereon overawed and controlled by force of arms, and said train robbed of more than $20,000, and amongst other all of the above articles of value, by the said bandits and robbers, who made off with their booty; and the said trustees were unable to deliver the said articles of value, as they had agreed, at the terminus of said road to said Morgan steamer, and no part of the same reached the consignees of appellees.

7. February 5, 1891, appellees demanded of S. Celaya and F. San Roman, as trustees of the Rio Grande Railway Company, that said railway company deliver to them the property, or, in its absence, its value, as per the bill of lading.

The trustees having declined to pay, appellees bring their suit against the Rio Grande Railway Company alone. Appellees admit that the mortgage under which the trustees have taken possession of the railway, to the total exclusion of the company, was duly executed in accordance with law and the charter of the company.

8. The bill of lading issued by the Morgan line of steamers was for the shipment of the money via the Rio Grande Railway Company and Morgan line of steamers to New Orleans, Louisiana. It stipulated, that the money was to be " conveyed upon said steamship direct or transhipped as aforesaid to the port of New Orleans, in like good order and condition (the acts of God, the country's enemies, fire at sea or in port, accidents to or from machinery, boilers, or steam, restraint of government, pirates, robbers, or thieves, collisions at sea or at port, and all and every danger of the seas, river, and steam navigation, of whatever nature or kind soever, excepted; and neither the ship nor owners thereof being liable for loss from any of the causes above excepted), and there to be delivered," etc.

*Conclusions of Law.*—1. We do not deem it necessary to enter upon an examination of the authorities or a discussion of the cases with the view to determine the weight of authority from this and other States upon the question presented by appellant as to its liability as a common

carrier while its railway is being operated by trustees under authority conferred by a mortgage of its railway property and franchises, because we are of the opinion that in this State a railway company can not voluntarily surrender the management and control of its railway to others, and thereby relieve itself of its duties and liabilities to the State and to the public. This has been practically decided by our Supreme Court in the case of Woodhouse v. Rio Grande Railway Company, 67 Texas, 416, wherein the appellant here was appellee in a cause of action that arose during the management of the same trustees. It does not appear that in that case the court had under consideration the clause in the defendant's charter, which is a special act of the Legislature, authorizing the company to raise money by the sale of bonds and to secure the same by a mortgage of its road, its capital stock, its corporate franchises, etc., in such manner and form as said company or its directors might deem best and expedient; but we are of the opinion that the power to mortgage. contained in the charter is not sufficient to authorize the defendant to surrender control of its railway and the management thereof to other persons, and relieve itself of its liabilities and duties to the State and public. We hold, therefore, that the trustees, Celaya and San Roman, must be treated as the agents of the defendant for the management and operation of its railway in the discharge of its duties as public carriers, and that the defendant is liable for the loss occurring during such control.

2. The case was tried upon a statement of the facts which had been agreed upon and filed by the parties. When it was offered on the trial, the defendant objected to it as an entirety, for the several different reasons stated in the exceptions to its admission appearing at the end of the statement. The objections do not point out the particular portions of the evidence objected to, nor does it appear·what part of the evidence was offered by the defendant. We do not feel that we should be required to pass upon the number of objections addressed to the entire evidence, especially when it is not shown what part of the evidence was subject to the objections; but we do not think there was any error in overruling the objections, even if they should be entertained, because the defendant was liable for the acts of the trustees as its agents, and it was not necessary in order to authorize the introduction of the evidence that such agency should be averred. The surrender of the control of its railroad by the defendant was its voluntary act, and not in obedience to authority of a court, as in the case of a receiver.

3. It is now well settled, that legal interest may be allowed upon the value of the goods as a part of the measure of damages when a common carrier has not delivered them according to contract. Railway v. Jackson, 62 Texas, 212. The court in this case, sitting as a jury, awarded interest at the rate of 8 per cent per annum until the law went into effect changing the rate to 6 per cent. The objection is made that 6 per cent

only should have been allowed for the entire time. It would seem that the object of the rule is to give the shipper the current rate of legal interest on the value of his property which has been lost. This the court has given, and we see no error in its action. There is authority for this rule in cases of contract where the rate of interest is not stipulated. White v. Lyons, 42 Cal., 279, and other authorities cited by appellees.

4. The evidence does not show that the shipment of the money was interstate; but if it did, the limitation of liability by the steamship company in its bill of lading applies only to carriage by the ship.

5. Appellant's proposition, that in any event it was only liable for negligence, because the carriage was gratuitous, the record not showing that it was for compensation, is not supported by the assignment of error under which it is stated.

There being no error, the judgment of the court below will be affirmed.

*Affirmed.*

Delivered October 19, 1893.

Writ of error refused by the Supreme Court, January 3, 1894.