Decided 6 July, 1903.

**GRAHAM *v.* MERCHANT.**

[72 Pac. 1088.]

CONSTRUCTION OF PLEADING AS TO THE PLEADER.

1. Pleadings are usually construed against their authors in cases where the meaning is uncertain; as, in this case, which is an action for money had and received, brought by a vendee of land under a contract providing that the vendor might rescind and forfeit payments then made, in case any required payment should not be made at the appointed time, where it appeared that the last installment of the purchase price was due on March 15th, and that a stated sum had been received prior to July 28th of the same year, it must be inferred that this sum was received after March 15th.

TIME AS ESSENCE OF A CONTRACT — EXERCISE OF RIGHT TO FORFEIT.

2. A provision in a contract for the sale of realty, giving the vendor the right of forfeiture upon default in a stipulated condition to be performed by the vendee, is valid and enforceable.

OPTION TO FORFEIT MUST BE EXERCISED.

3. A right to declare a forfeiture of a contract is one that must be affirmatively exercised by the person reserving it.

VENDOR — WAIVING RIGHT TO FORFEIT — PAYMENT BY VENDEE.

4. Where a contract for the sale of land provided for the payment of the purchase price in installments, and stipulated that, if any installment should not be

paid when due, the vendor might take possession of the land, and declare forfeited all payments which had been made, the acceptance of a payment by the vendor after the vendee was in default was an election to consider the contract still in force.

NOTICE BY VENDOR OF ELECTION TO FORFEIT.

5. Under such a contract, while the vendee is in default under a waiver of the right to declare a forfeiture, the vendor cannot forfeit except after notice and after allowing the vendee a reasonable time within which to comply with the terms of the contract.

INSTRUCTION AS TO BURDEN OF PROOF.

6. In an action by the vendee to recover payments made on a contract for the sale of land, providing that, in case the vendee should make default in the payment of any of the installments of the purchase price, the vendor might declare forfeited the payments previously made, and reënter on the land, it was admitted that the last payment was not made when it was due, the vendee alleging the making of an oral contract for an extension of time. The vendor requested an instruction that the burden was on plaintiff to prove by the preponderance of the evidence that such agreement had been entered into, and that, unless the jury so found, their verdict should be for the vendor. *Held*, that this request was included in a charge that the burden was on plaintiff to prove the allegations of the complaint, and to prove by a preponderance of the evidence that a parol contract had been entered into as alleged, and that if the vendee made default, and while such default continued the vendor demanded payment, and retook possession of the premises and exercised control over them, the vendee could not recover.

INSTRUCTION WITHIN ISSUES OF PLEADINGS — RESCISSION BY VENDOR.

7. A contract for the sale of land stipulated for the payment of the purchase price by installments, and provided that, if default should be made in the payment of any installment, the vendor might reënter, and declare forfeited the installments paid. After a reëntry by the vendor, the vendee sued to recover the installments which he had paid. The plaintiff alleged that after the time of default he made a payment on the land, which was accepted under the contract. The defendant denied this, but admitted that after default he had received a certain amount in stumpage on logs cut and removed from the land. Plaintiff claimed this money was received as a payment on the land. *Held*, that an instruction that defendant's entry on the land was wrongful, if the jury found that payments had been accepted by him after plaintiff was in default, was within the issues.

IDEM.

8. Under such conditions an instruction that the vendor's reëntry was wrongful if the time for completing the payments had been extended beyond the time of such reëntry was within the issues made by the pleadings.

IDEM.

9. Under such conditions an instruction that the right of the vendor to reënter and declare a forfeiture without notice was waived if, after default, the parties had dealt with the land in a manner inconsistent with the theory of a previous forfeiture was proper.

IDEM.

10. Under such conditions, it appearing that after the default, but during the extension of time alleged by the vendee to have been made, the vendor cut and removed from the land a large quantity of timber, a charge that the vendor's reëntry was wrongful, if he had refused to account for moneys which should have been credited to the vendee was proper.

WHEN INTEREST BEGINS ON MONEY HAD AND RECEIVED.

11. Under B. & C. Comp. § 4595, providing for interest on money received to the

use of another, and retained beyond a reasonable time without the owner's consent, interest begins to run upon money had and received from the time it is received, and not from the time of demand therefor.

EFFECT OF CHANGING RATE OF INTEREST ON IMPLIED CONTRACT.

12. In an action for money had and received, where it appears that the statutory rate of interest has been changed after the money was received and before the judgment, interest should be computed to the date of the change at the rate in force when the transaction took place, and thereafter at the new rate to the date of the judgment.

POWER OF SUPREME COURT TO MODIFY A JUDGMENT.

13. Under B. & C. Comp. § 556, conferring on the supreme court power to modify judgments and to order new trials, a judgment based on a verdict may be reversed and the cause remanded with directions to enter a particular judgment in case the facts are undisputed.

From Coos: JAMES W. HAMILTON, Judge.

This is an action by R. A. Graham against C. H. Merchant to recover money paid by plaintiff on a contract which he seeks to rescind in consequence of the defendant's alleged abandonment thereof. It is averred in the complaint, in substance, that on March 21, 1895, a contract was entered into whereby the defendant stipulated to sell and convey to the plaintiff 720 acres of land in Coos County for $40,000, of which $5,000 was then advanced, $3,000 to be paid July 15th of that year, and $8,000 on March 15th each year for four years thereafter, ending March 15, 1899, with interest, payable annually, at 7 per cent per annum; the taxes imposed upon the land to be paid by the plaintiff, and all improvements placed thereon by him to remain until the final payment; time to be of the essence of the agreement, and, if plaintiff failed to make any of the payments punctually, the defendant should have the right to declare the contract null and void, in which case plaintiff's interest in the premises should cease, without any right of reclamation or compensation for the money paid or improvements made. It is further alleged that the following payments have been made, to wit: March 21, 1895, $5,000; July 15, 1895, $3,081.33; March 15, 1896, $10,240; March 25, 1897, $9,680; that on the installments of $8,000 each which matured March 15, 1898, and March 15, 1899, with

interest thereon of $1,220 and $560, respectively, there was paid "March 25, 1897, to July 31, 1899, various amounts at different times, aggregating $7,320, and July 31, 1899, $1,800, all of which payments were accepted by the defendant under said written contract;" that about July 28, 1899, a parol agreement was entered into whereby defendant was permitted to cut and remove saw logs from said land, crediting plaintiff with stumpage therefor at the rate of $1 per thousand feet, board measure, on the purchase price of the land; that, in pursuance of the latter agreement, defendant, prior to February 22, 1902, cut and removed 12,000,000 feet of logs of the stumpage value of $12,000, but neglected to give plaintiff credit for any part thereof; that he then and thereafter wrongfully refused to recognize plaintiff as having any interest in the land, asserting that all his right thereto had been forfeited by his failure to make the required payments, and wrongfully repudiated and rescinded said contracts; and that, in consequence of such conduct, plaintiff, about April 9, 1902, relinquished and surrendered all his interest in and possession of said land to defendant, and demanded repayment of the money received, and interest thereon, amounting to $51,956.33, but he neglected to pay any part thereof, wherefore judgment is demanded therefor.

The answer admits the execution of said contract, and the payment of the several installments to and including that of $9,680, March 25, 1897, but denies that plaintiff thereafter, or prior to July 31, 1899, paid $7,320, or that he paid on the latter day $1,800, and avers that the following were the only sums received after March 25, 1897, to wit, December 15, 1897, $1,149.61, and October 8, 1898, $393.73, and also denies that any of the payments set forth in the complaint were accepted or received by the defendant under said written contract or otherwise, except as therein admitted. He admits, however, that prior to July

28, 1899, in addition to the sums stated in the answer to have been paid, he received $1,955.07 as stumpage on logs removed from said land, "the same being a part of the substance of said property;" denies that said parol agreement was entered into, or that he cut or removed 12,000,-000 feet of logs, of the stumpage value of $12,000, after July 28, 1899, or any quantity exceeding in value $7,500. For a first separate defense, it is alleged that on March 21, 1895, the parties entered into another agreement, whereby plaintiff was authorized to cut and remove timber from said land, paying defendant therefor stumpage at $1 per thousand feet, board measure, and that, in pursuance of said agreement, plaintiff removed from the premises 10,-000,000 feet of logs, for which he was to pay stumpage in the sum of $10,000, but he neglected to do so, and failed to account therefor; that in addition to said sum there was due July 28, 1899, on the purchase price of the land, $15,-964.24, on which day defendant demanded the payment thereof from plaintiff, who promised to pay or adjust the same in two or three days thereafter, but, without attempting to do so, he left the state, abandoned the contract, forfeited all his rights thereunder, and neglected to pay any part of said sums; that about August 1, 1899, in consequence of plaintiff's default, defendant declared said contract null and void, whereupon the premises reverted to and invested in him, and on March 15, 1900, claiming to be the owner of the land, he took possession thereof; and that since July 28, 1899, plaintiff has had no interest therein, nor any legal claim to the money paid on account thereof. For a second defense, the execution of the contract for the purchase of the land, and the payments thereon, as hereinbefore stated in the answer, are admitted, and, as an offset and counterclaim, it is averred that between January 1, 1897, and July 1, 1900, plaintiff cut and removed 10,000,-000 feet of logs, for which he promised to pay stumpage

in the sum of $10,000, but that he had not paid any part thereof, wherefore judgment is demanded therefor.

The reply, having denied that plaintiff cut or removed more than 6,000,000 feet of logs, or that he had not accounted or paid therefor, alleges that after July 28, 1899, the logs received by him from said land did not exceed 2,500,000 feet, of the stumpage value of $2,500, which is the entire sum he had not paid or accounted for, and denies the other material averments of new matter in the answer. The jury having been impaneled, plaintiff's counsel, in his opening statement, informed them that his client claimed to recover only such payments as were admitted in the answer; and a trial, being had, resulted in a judgment for plaintiff in the sum of $36,760.55, and the defendant appeals.          CONDITIONALLY AFFIRMED.

For appellant there was an oral argument by *Mr William W. Cotton*, with a brief over the names of *Andrew M. Crawford*, *Williams*, *Wood & Linthicum*, and *Cotton, Teal & Minor*, to this effect:

I. By the contract of March 21, 1895, time was expressly declared to be of the essence of the contract. Such an agreement is valid and will be enforced according to its terms: *Frink* v. *Thomas*, 20 Or. 265, 268 (17 L. R. A. 239, note, 25 Pac. 717); *Clarno* v. *Grayson*, 30 Or. 111 (46 Pac. 426); *Glock* v. *Howard & W. Colony Co.* 123 Cal. 1 (69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713); *Missouri River, etc. Ry. Co.* v. *Brickley*, 21 Kan. 206, 217.

II. The complaint shows that on July 31, 1899, plaintiff was in default, and that the defendant declared a forfeiture. In order to show that this forfeiture was a wrongful act, plaintiff must allege and show some excuse for his default: *Glock* v. *Howard & W. Colony Co.* 123 Cal. 1 (69 Am. St. Rep. 17, 43 L. R. A. 199, 55 Pac. 713); *Missouri River, etc. Ry. Co.* v. *Brickley*, 21 Kan. 206, 217. The only excuse alleged is the making of the parol contract, and the jury

should have been told that this must be established or the verdict must be for defendant, but the court did not do so.

III. The plaintiff knew in December, 1900, that Merchant had declared a forfeiture, and had refused to be further bound by the contract, but the plaintiff did not seek to rescind the contract until April 9, 1902, and did not relinquish possession of the property until that date. This delay prevents rescission: *Scott* v. *Walton,* 32 Or. 460, 464 (52 Pac. 180); *Vaughn* v. *Smith,* 34 Or. 54, 57 (55 Pac. 99); *Hogan* v. *Kyle,* 7 Wash. 595 (35 Pac. 399, 38 Am. St Rep. 910.)

IV. The plaintiff's demand was unliquidated, and therefore the court erred in charging the jury that interest might be allowed thereon: *Pengra* v. *Wheeler,* 24 Or. 532 (34 Pac. 354); *Smith* v. *Turner,* 33 Or. 379 (54 Pac. 166).

V. Plaintiff's claim does not come within the meaning of Section 3587, Hill's Ann. Laws, or Section 4595, B. & C. Comp., and therefore does not bear interest: *State* v. *Multnomah County,* 13 Or. 287, 295 (10 Pac. 635); *Poppleton* v. *Jones,* 42 Or. 24 (69 Pac. 922).

VI. In any event, plaintiff was entitled to interest at 8 per cent only to October 14, 1898, when the rate was changed, and it was error to allow interest at that rate to the date of the verdict; and interest should have been computed only from the time a demand was made: *Rio Grande Ry. Co.* v. *Cross,* 5 Tex. Civ. App. 454 (23 S. W. 529); *White* v. *Lyons,* 42 Cal. 279; *Reese* v. *Rutherford,* 90 N. Y. 644; *Stark* v. *Olney,* 3 Or. 88.

For respondent there was an oral argument by *Mr. Edw. B. Watson,* with a brief over the names of *Watson, Beekman & Watson, A. J. Sherwood,* and *Dolph, Mallory, Simon & Gearin,* to this effect:

(1) Contract provisions for forfeitures are strictly construed; the option to forfeit is *strictissimi juris*: Bishop, Contracts, §§ 417, 418; *Taylor* v. *Patterson,* 9 La. Ann. 251;

*Crane* v. *Hyde Park*, 135 Mass. 147, 149 ; *Richardson* v. *Woodlawn Town Co.* 5 Kan. App. 881 (47 Pac. 556, 559).

(2) An option to forfeit is of no effect until it is exercised : *Church* v. *Ayers*, 5 Cow. 272, 273 ; *Cartwright* v. *Gardner*, 5 Cush. 273, 281 ; *Mason* v. *Caldwell*, 5 Gillman (Ill.) 196 (48 Am. Dec. 330); *Heald* v. *Wright*, 75 Ill. 17, *Wilcoxson* v. *Stitt*, 65 Cal. 596 (4 Pac. 629–632, 52 Am. Rep. 310); *Bohart* v. *Investment Co.* 49 Kan. 94 (30 Pac. 180, 181); *Chambers* v. *Anderson*, 51 Kan. 385 (32 Pac. 1098–1100); *Richardson* v. *Woodlawn Town Co*. 5 Kan. App. 881 (47 Pac. 556–559); *Gaughen* v. *Kerr*, 99 Iowa, 214 (68 N. W. 694–697); *Johnson* v. *Ecklund*, 72 Minn. 195 (75 N. W. 14–15).

(3) A valid declaration of forfeiture requires notice : *Merrifield* v. *Cobleigh*, 4 Cush. 178, 185 ; *Carney* v. *Newberry*, 24 Ill. 203 ; *Eaton* v. *Schneider*, 185 Ill. 508 (57 N. E. 421); *Boyum* v. *Johnson*, 8 N. D. 306 (79 N. W. 149); *Mullin* v. *Bloomer*, 11 Iowa, 360; *Gety* v. *Sack*, 19 Mo. App. 470 ; *Crescent Mfg. Co.* v. *N. O. Nelson Mfg. Co.* 100 Mo. 325 (13 S. W. 503).

(4) An option to declare a forfeiture must be promptly exercised or it is waived : *Basse* v. *Gallegger*, 7 Wis. 448 ; *Hill* v. *Grigsby*, 35 Cal. 662 ; *McCrosky* v. *Ladd*, 96 Cal. 456 (31 Pac. 558–560); *Hogan* v. *Kyle*, 7 Wash. 595 (35 Pac. 399–401, 38 Am. St. Rep. 910); *Gaughen* v. *Kerr*, 99 Iowa, 214 (68 N. W. 694–697); *Linch* v. *Paris L. & G. Elev. Co.* 80 Tex. 23 (15 S. W. 208).

(5) An option once waived cannot be exercised in any case, without a new default on proper notice and demand : *Soper* v. *Gabe*, 55 Kan. 646 (41 Pac. 969, 970); *Brentnall* v. *Marshall*, 10 Kan. App. 488 (63 Pac. 93, 95); *Underwood* v. *Tew*, 7 Wash. 297 (34 Pac. 1100–1102); *Hogan* v. *Kyle*, 7 Wash. 595 (35 Pac. 399–402, 38 Am. St. Rep. 910); *Eaton* v. *Schneider*, 185 Ill. 508 (57 N. E. 421); *Hatton* v. *Johnson*, 83 Pa. St. 219; *Frink* v. *Thomas*, 20 Or. 265, 269.

(6) Where the parties have dealt with each other upon

the subject of the contract, after the default, and upon the assumption of its continuance in force, and have changed their positions, as by incurring expenses, or making further payment, the option to declare a forfeiture is finally and conclusively waived and relinquished : Pomeroy, Contracts, § 394; Bishop, Contracts, §§ 792–797; *Clark* v. *Jones*, 1 Denio, 516–520 (43 Am. Dec. 706); *Vankirk* v. *Patterson*, 201 Pa. St. 90 (50 Atl. 966); *Fargusson* v. *Talcott*, 7 N. D. 183 (73 N.W. 207, 208); *Boyum* v. *Johnson*, 8 N. D. 306 (79 N. W. 149); *Paulman* v. *Cheney*, 18 Neb. 395 (25 N. W. 495, 53 Am. Rep. 820); *White* v. *Atlas Lum. Co.* 49 Neb. 82 (68 N. W. 359–361); *Clark* v. *Neuman*, 56 Neb. (374 (76 N. W. 892; *Watson* v. *White*, 152 Ill. 364 (38 N. E. 902–906); *Monson* v. *Bragdon*, 159 Ill. 61 (42 N. E. 383–385); *Soper* v. *Gabe*, 55 Kan. 646 (41 Pac. 969–971).

(7) The claim or assertion by the party holding the option that all rights and interests of the other party have been forfeited and lost, without a valid exercise of the option, is itself an act of rescission : *Christy* v. *Arnold* (Ariz.), 36 Pac. 918–920.

(8) Where a contract is rescinded, payments made thereon, are recoverable as money had and received : Bishop, Contracts, §§ 837–842 and 1428–1432 ; Clark, Contracts, §§ 269–271 ; 2 Sutherland, Damages, p. 232 ; *Drew* v. *Pedlar*, 87 Cal. 443 (25 Pac. 749–751, 22 Am. St. Rep. 257); *Vankirk* v. *Patterson*, 201 Pa. St. 90 (50 Atl. 966); *Davis* v. *Bronson*, 2 N. D. 300 (50 N. W. 836–839, 33 Am. St. Rep. 783, 16 L. R. A. 655); *Stephens* v. *Wood*, 39 Or. 441 (65 Pac. 602).

(9) In such cases the jury may allow interest on each payment from the time it was made at the legal rate: *Scott* v. *Sloan*, 3 Tex. Civ. App. 302 (23 S. W. 42); *Evans* v. *Bentley*, 9 Tex. Civ. App. 112 (29 S. W. 497, 499); *Williamson* v. *Johnson*, 62 Vt. 378 (9 L. R. A. 277–279, 22 Am. Rep. 117, 20 Atl. 279); *Gates* v. *Parmly*, 93 Wis. 294 (67

N. W. 739); *McKee* v. *Phœnix Ins. Co.* 28 Mo. 383 (75 Am. Dec. 129); *Tupy* v. *Kocourek*, 66 Ark. 433 (51 S. W. 69); *Thompson* v. *New York Life Ins. Co.* 21 Or. 466, 488–490 (28 Pac. 628).

(10) The complaint is based on rescission, and all its allegations must be construed in harmony with that theory: Phillips, Code Pl. §§ 351–354; *Evansville & Rich. R. Co.* v. *Barnes*, 137 Ind. 306 (36 N. E. 1092); *Aetna Pow. Co.* v. *Hildebrand*, 137 Ind. 462 (45 Am. St. Rep. 194, 37 N. E. 136); *Newell* v. *Nicholson*, 17 Mont. 389 (43 Pac. 180–182).

(11) But if there was any error in the allowance of the item of $1,955.07 received by Merchant on July 28, 1899, or in the allowance of interest at too high a rate, which is properly before the court, it will only require a reduction of the judgment by amounts susceptible of ready calculation, and which the respondent should have the opportunity to remit, and avoid reversal, under the settled practice: *Mackey* v. *Olssen*, 12 Or. 429 (8 Pac. 357); *Fiore* v. *Ladd*, 29 Or. 528 (46 Pac. 144); *Cochran* v. *Baker*, 34 Or. 555 (52 Pac. 520).

MR. CHIEF JUSTICE MOORE, after stating the facts in the foregoing terms, delivered the opinion.

1. It is contended by defendant's counsel that the parol agreement was the only fact alleged as an excuse to prevent a forfeiture of plaintiff's rights under the contract, and, this averment having been denied, the court erred in not instructing the jury, when so requested, that the burden was cast upon the plaintiff to prove by a preponderance of the evidence that such agreement had been entered into, and that, unless they so found, their verdict should be for the defendant. The defendant having alleged that he had been paid on account of the last two installments, the following sums, to wit, December 15, 1897, $1,149.61, and October 9, 1898, $393.73, and in addition

thereto had received prior to July 28, 1899, $1,955.07, as stumpage, and this averment being accepted as true by plaintiff's counsel in his statement of the case to the jury, another issue clearly stated in the pleadings remained— as to whether or not the last payment was accepted by the defendant upon the purchase price. The answer admits that $1,955.07 was received prior to July 28, 1899, and, by adopting the ordinary rule that a pleading will be construed most strongly against the pleader (*Pursel* v. *Deal*, 16 Or. 295, 18 Pac. 461; *Kohn* v. *Hinshaw*, 17 Or. 308, 20 Pac. 629), it must be inferred that this sum was received after March 15, 1899, when the last installment of the purchase price and interest matured.

2. Time was expressly declared to be of the essence of the contract, and the defendant having the option, upon a default in the payment of any installment of the purchase price, to declare a forfeiture, such stipulation is valid, and will be enforced according to its terms, when the right has been duly exercised: *Frink* v. *Thomas*, 20 Or. 265, 268 (25 Pac. 717, 12 L. R. A. 239); *Clarno* v. *Grayson*, 30 Or. 111 (46 Pac. 426); *Missouri, etc. Ry. Co.* v. *Brickley*, 21 Kan. 275.

3. A forfeiture clause is inserted in a contract to convey real property for the advantage of the vendor, and, as a competent party may waive any provision that is beneficial to him, a mere option to declare a forfeiture is not self-executing, and hence does not become operative until exercised: *Cartwright* v. *Gardner*, 5 Cush. 273; *Heald* v. *Wright*, 75 Ill. 17; *Bohart* v. *Republic Inv. Co.* 49 Kan. 94 (30 Pac. 180); *Chambers* v. *Anderson*, 51 Kan. 385 (32 Pac. 1098).

4. When a vendor abandons his contract to convey, the vendee, in his choice of remedies, may elect to rescind the contract, and thereupon maintain an action at law to recover what he has paid thereon, as money had and received:

*Lyon* v. *Annable,* 4 Conn. 350; *McKinnon* v. *Vollmar,* 75 Wis. 82 (43 N. W. 800, 6 L. R. A. 121, 17 Am. St. Rep. 178); *Glock* v. *Howard & W. Colony Co.* 123 Cal. 1 (55 Pac. 713, 43 L. R. A. 199, 69 Am. St. Rep. 17). This theory was adopted by plaintiff's counsel, who maintain that if the money received by the defendant after March 15, 1899, was accepted by him as a payment on the purchase price of the land, he could not thereafter declare a forfeiture, except upon a demand and notice, and, this being so, no error was committed in refusing to give the instruction requested. If the money so received as stumpage was accepted on the purchase price of the land after the maturity of the final payment, the defendant must have elected to consider the contract in force.

5. It remains to be seen whether, after such election, he could rescind the contract without giving notice. "The law," says Mr. Justice WOOD, in *Higby* v. *Whittaker,* 8 Ohio, 198, "requires some positive act by the party who would rescind, which shall manifest such intention, and put the opposite party on his guard, and it then gives a reasonable time to comply; but it requires eagerness, promptitude, ability, and a disposition to perform, by him who would resist a rescission of his contract." In *Mullin* v. *Bloomer,* 11 Iowa, 360, it is held that a vendee cannot rescind a contract for the conveyance of real estate without the performance of some act which will give the vendor notice of his intention and put him upon his guard. In *Eaton* v. *Schneider,* 185 Ill. 508 (57 N. E. 421), in a suit for specific performance of a bond for a deed, which provided that time should be of the essence of the contract, it appeared that the vendor having given the vendee two days extension after maturity to adjust the matter, and three weeks having elapsed before the vendor indicated any intention of declaring a forfeiture, it was held that such indulgence

43 Or.—20.

operated as a suspension of the vendor's right to declare a forfeiture without notice. In *Gaughen* v. *Kerr*, 99 Iowa, 214 (68 N. W. 694), it was held that a failure to pay the installments when they matured did not *ipso facto* work a forfeiture of a contract under a clause conferring an option to do so, but merely gave a right to declare a forfeiture, which was waived unless exercised promptly. In *Eaton* v. *Schneider*, 185 Ill. 508 (57 N. E. 421), it is held that a forfeiture cannot be declared after waiver, except upon giving notice. To the same effect is *Basse* v. *Gallegger*, 7 Wis. 448 (76 Am. Dec. 225), where it is held that a reservation, in a contract, of an option to declare it void for a failure to perform its conditions, to be of any effect, must be exercised by election at the time of the default. In *Watson* v. *White*, 152 Ill. 364 (38 N. E. 902), it was held that, where time is stated to be of the essence of a contract to convey land, if both parties, by a mutual course of conduct, treat the time clause as waived or suspended, one of them cannot suddenly insist upon forfeiture, but must, in order then to avail himself of the time clause, give reasonable, definite, and specific notice of his changed intention. When a vendor waives the stipulation of a contract prescribing the time of its performance, he cannot rescind without giving the vendee reasonable notice to comply with his part of the agreement: *Falls* v. *Carpenter* 28 Am. Dec. 592; *Cummings* v. *Rogers*, 36 Minn. 317 (30 N. W. 892); *Harris* v. *Troup*, 8 Paige, *423. To the same effect, see *Merrifield* v. *Cobleigh*, 4 Cush. 178; *Monson* v. *Bragdon*, 159 Ill. 61 (42 N. E. 383); *King* v. *Radeke*, 175 Ill. 72 (51 N. E. 698); *Boyum* v. *Johnson*, 8 N. D. 306 (79 N. W. 149). Under the rule announced in these cases, if the sum of $1,955.07 received by the defendant after March 15, 1899, on account of stumpage, was accepted by him as a payment on the purchase price of the land, as is alleged in the complaint, the plaintiff's default was thereby waived, and the

defendant's right to declare a forfeiture could not thereafter be exercised without a demand and reasonable notice. The existence of the parol agreement not being the only issue involved, no error was committed in refusing to give the instruction requested.

6. The court, however, practically charged the jury as desired, for in the sixth instruction they were told that the burden of proof was upon the plaintiff to show by a preponderance of the testimony all the affirmative allegations of the complaint, and that he was required to prove by the same degree of evidence that a parol contract had been entered into as alleged. The jury, in the fifth and twelfth instructions, were told, in substance, that, the alleged parol agreement having been relied upon by the plaintiff to show an extension of time for the performance of the terms of the original contract, the burden of proof rested upon him to show that there was such an extension, and that the defendant had wrongfully disregarded his rights under the contract. They were not expressly charged, however, that, unless they should find from the evidence that the parol agreement had been entered into, their verdict should be for the defendant; but as they were told in the eleventh instruction that if plaintiff made default in the payments agreed upon, and, while such default continued, defendant demanded payment of the remainder due under the contract, and, the same not being paid, retook possession of the premises, and exercised acts of control over them, plaintiff was not entitled to recover the moneys paid, and their verdict should be for the defendant, it was, in effect, the giving of the instruction requested.

7. The defendant's counsel, having excepted to the following part of the charge, contend that the court erred in giving it, to wit:

"(13) If you should find from the testimony, as you have a right to, under the circumstances in the case, as to whether

or not payments were accepted afterwards by the defendant, and the other circumstances of the case tending upon that point; also the testimony which has been introduced before you— If you should find that there was an extension of time, or that the parties dealt with it afterwards (that is, after the time for the final payment had expired,) and defendant did not then exercise his right of option to forfeiture under the terms of the written contract, or by refusing to give an account of the moneys which should have been credited to plaintiff, and took possession of the property, without giving him reasonable notice or demand, that would be a wrongful act in disregarding or rescinding the rights of plaintiff, and plaintiff would be entitled to bring action for the recovery of the purchase price which he had paid."

An examination of the language complained of will show that the court instructed the jury, in effect, that plaintiff was entitled to recover the money paid, if in disregarding or rescinding his rights the defendant acted wrongfully, and that his conduct in this respect was unjust, if they found either (1) that payments had been accepted by him after March 15, 1899; (2) that the time for the payment of the purchase price had been extended by entering into the alleged parol agreement; (3) that the parties had dealt with the property after March 15, 1899, in a manner inconsistent with the theory of a declaration of forfeiture; or (4) that the defendant had refused to account for the moneys which should have been credited to plaintiff.

Considering these grounds in their respective order, it will be remembered the answer admits that the defendant received for stumpage on logs taken from the land prior to July 28, 1899, $1,955.07, and subsequent thereto, $7,500, and these sums are undoubtedly the "payments" referred to by the court. The plaintiff's theory is that the money received prior to the time stated was accepted as a payment on the purchase price of the land, thereby waiving his default, and that the sum received after July 28,

1899, was obtained in pursuance of the parol agreement, while the defendant's theory is that having declared the original contract forfeited about August 1, 1899, the land reverted to him, together with the timber thereon, and all sums of money derived from the stumpage on logs cut and removed therefrom. The complaint having alleged that about July 31, 1899, plaintiff paid $1,800, which sum was "accepted and received by the defendant under said written contract," and this averment being denied in the answer, which admitted that prior to July 28, 1899, the defendant received $1,955.07 in stumpage on logs cut and removed from the land, and this averment being accepted by plaintiff's counsel as correct, we are satisfied that it was intended thereby that the sum so admitted as having been received must have been in lieu of the $1,800 alleged to have been paid about July 31, 1899, thereby rendering the first ground of the instruction clearly within the issues.

8. The extension of the time in which to pay the purchase price of the land, alleged to have been secured by entering into the parol agreement, as stated in the second ground of the instruction, is also within the issues. It will be remembered that, after defendant's alleged declaration of forfeiture, plaintiff avers that he cut and removed from the land 2,500,000 feet of logs, for which he was to pay the defendant $2,500. The testimony shows that defendant lived near the land in question, and, if these logs were cut and removed by plaintiff as he alleges, the defendant must have been cognizant thereof; and if, upon the discovery of what would otherwise have been a trespass, he did not then exercise his right to declare a forfeiture, it was a circumstance from which the jury might reasonably infer that the parties dealt with the land after the maturity of the final payment of the purchase price as they had prior thereto. The deposition of the plaintiff is to the effect that after August 1, 1899, when it is alleged

in the answer that the forfeiture was declared, relying upon the faith of the parol agreement, he extended a line of railroad on the land in question about 1,000 feet, over which he transported logs taken from the premises, and in this respect he is corroborated by the testimony of other witnesses. This work is inconsistent with defendant's theory, and having known, as he must, that this improvement was being made, if he did not then protest against it, it was a circumstance from which the jury might reasonably infer that the forfeiture had not been declared.

9. The third ground stated in the instruction is not expressly mentioned in the pleadings, but it is so nearly related thereto that it may be said to be fairly within the issues.

10. The defendant alleged that after August 1, 1899, he cut and removed from the land logs of the value of $7,500, and, if the parol contract had been entered into, it was incumbent upon him to account to plaintiff therefor; but if, neglecting to do so, he took possession of the property without giving plaintiff reasonable notice or demand, his act in this respect was wrongful, as stated in the fourth ground of the instruction, which was within the issues. The instruction, in our opinion, is germane to the issues, and no error was committed in giving it.

11. The court instructed the jury, in effect, that, if plaintiff was entitled to recover the money paid by him, he had a right to interest thereon at 8 per cent from the time such payments were made until September 12, 1902, on the sums paid prior to October 14, 1898, and 6 per cent on all sums paid thereafter. The defendant's counsel, having excepted to this part of the charge, maintain that, if plaintiff was entitled to any interest, he could only recover 6 per cent upon the sums so paid upon demand therefor after the rescission of the contract. The statute, so far as applicable to the case at bar, is as follows: "The rate of in-

terest in this state shall be six per centum per annum, and no more, * * on money received to the use of another and retained beyond a reasonable time without the owner's consent, expressed or implied ": B. & C. Comp. § 4595. It is argued that interest does not begin to run upon money had and received to the use of another until demand for its payment, and, its retention thereafter being without the owner's consent, the statute allows interest from such demand. In the absence of an express agreement of the parties respecting the rate to be paid for the use of money, the right to recover interest must be found in the statute conferring it. Thus, as was said in *Leete* v. *Pacific M. & M. Co.* (C. C.) 89 Fed. 480 : "When a man receives money that belongs to another, he ought, on general principles of equity and justice, to pay the legal interest from the time of the demand for the payment thereof; but, if the statute does not allow it, interest should not be given, except from the date of the entry of the judgment." We think our statute was designed to provide for the payment of interest in cases of this character from the time the money was received to the use of another, and not from the date of the demand, for, the contract having been abandoned by what the jury found to be a wrongful act of the defendant, thereby authorizing the plaintiff to rescind, the effect of the conduct of the parties is as though no contract had ever been entered into, and, this being so, the money was retained without the plaintiff's implied consent, which entitles him, in our opinion, to interest from the time the money was paid.

12. The question now to be considered is the rate recoverable. The rule is settled in this state that contracts for the payment of money, stipulating also for the payment of legal interest, or upon which the law provides for the payment thereof, will draw the rate prescribed or in force when the contract is entered into, until final payment,

notwithstanding an intermediate change in the law: *Seton* v. *Hoyt*, 34 Or. 266 (55 Pac. 967, 43 L. R. A. 634, 75 Am. St. Rep. 641); *Shipley* v. *Hacheney*, 34 Or. 303 (55 Pac. 971); *Brauer* v. *Portland*, 35 Or. 471 (57 Pac. 546); *Monteith* v. *Parker*, 36 Or. 170 (59 Pac. 192); *Close* v. *Riddle*, 40 Or. 592 (67 Pac. 932, 91 Am. St. Rep. 580, and note). In each of these cases a contract for the direct payment of money was involved, but in the case at bar there was no express agreement to repay the sums received. The law, however, creates an implied promise to repay money received to the use of another, and attaches to the obligation a penalty for retaining it, and the damages thus awarded are measured by the legal rate of interest prescribed by statute: B. & C. Comp. § 4595. In *Aguirre* v. *Packard*, 14 Cal. 171 (73 Am. Dec. 645), the rule was announced, and since adopted in this state, that, notwithstanding an amendment of the statute, prescribing a different rate, interest follows a contract according to the law in force at the time it was entered into. In *White* v. *Lyons*, 42 Cal. 279, the defendant having received money to the plaintiff's use, judgment was rendered against him therefor, with legal interest at the rate prescribed at the time of the conversion. The statute having been amended thereafter, and before judgment, reducing the legal rate from ten to seven per cent per annum, it was held that the interest was improperly computed, the court saying: "In the absence of a contract for interest, it is only allowed as damages for a failure to pay the money due (*Fake* v. *Eddy's Ex'r*, 15 Wend. 80); and it is competent for the legislature to fix the amount which shall be recovered." So, too, in *Rio Grande R. Co.* v. *Cross*, 5 Tex. Civ. App. 454 (23 S. W. 529), in an action to recover for goods lost *in transitu*, it was held that the shipper was entitled to the value of the goods, with interest at eight per cent per annum until the law changing the legal rate to

six per cent went into effect, and with interest thereafter at the latter rate until the time judgment was entered.

These cases proceed upon the theory that, no contract having existed for the payment of the principal, the party injured by the wrongful retention of his money was entitled only to the current rate of interest, which was subject to fluctuation according to legislative fiat. We are satisfied that this is the rule that should be applied in the case at bar, and, as there is no dispute as to the time or amounts of the payments made by the plaintiff, the interest should be computed at 8 per cent per annum on all moneys from the time they were received until October 14, 1898, and at 6 per cent on the same sums from that time until September 12, 1902, when the judgment was rendered. The payments are as follows: March 21, 1895, $5,000; interest to October 14, 1898, at 8 per cent, $1,425.53. July 15, 1895, $3,081.33; interest, $800.43. March 15, 1896, $10,240; interest, $2,113.98. March 25, 1897, $9,680; interest, $1,202.46. December 15, 1897, $1,149.61; interest, $76.38. October 8, 1898, $393.73; interest, 52 cents. Total payments made prior to October 14, 1898, $29,544.67; interest thereon until that date, $5,619.30; interest on said payments from that date until September 12, 1902, at 6 per cent, $6,933.11. Total due, $42,097.08. The answer admits that prior to July 28, 1899, the defendant received the sum of $1,955,07 as stumpage on logs which it is alleged were a part of the substance of the estate, and it appears that judgment was rendered in plaintiff's favor for this sum, and interest from that date. It would seem that, the land having reverted to the defendant upon the plaintiff's rescission of the contract, the logs, which were an incident to the premises, became the defendant's property also, necessarily including the stumpage thereon; but this sum having been treated by the parties at the trial as a payment made by the plaintiff to the defendant, and no

exception thereto having been taken, it cannot now be disturbed. There will then be added to the total sum $1,955.07, and interest thereon at 6 per cent from July 28, 1899, to September 12, 1902, or $366.23; making in all $44,418.38.

13. The jury allowed the defendant's counterclaim of $10,000, and the judgment, having been rendered for $36,760.55, is $2,342.17 in excess of the sum due the plaintiff, according to his theory of the case; and this presents the question whether the cause should be sent back for a new trial, or with directions to modify the judgment. The appellate court possesses power to modify judgments, and may, if necessary and proper, order a new trial: B. & C. Comp. § 556. In construing this statute, it has been repeatedly held that where the facts are apparent from an inspection of the transcript, showing that a judgment is excessive in a certain sum, and no dispute exists concerning such facts, the court may remand the cause, with directions to enter a particular judgment, or send it back for a new trial: *Mackey* v. *Olssen*, 12 Or. 429 (8 Pac. 357); *Merchants' Nat. Bank* v. *Pope*, 19 Or. 35 (26 Pac. 622); *Nodine* v. *Shirley*, 24 Or. 250 (33 Pac. 379); *Grant* v. *Paddock*, 30 Or. 312 (47 Pac. 712); *Liebe* v. *Nicolai*, 30 Or. 364 (48 Pac. 172); *Cochran* v. *Baker*, 34 Or. 555 (52 Pac. 520); *Pacific Lum. Co.* v. *Prescott*, 40 Or. 374 (67 Pac. 207). In conformity with this rule, if plaintiff, within ten days, remits the sum of $2,342.17, the cause will be remanded to the court below, with directions to enter judgment in his favor for $34,418.38, with interest thereon at 6 per cent per annum since September 12, 1902—the defendant to have his costs and disbursements in this court upon the appeal; but, if this sum is not remitted within the time prescribed, the judgment will be reversed and a new trial ordered.

CONDITIONALLY AFFIRMED.